## GARR *v.* MARTIN.

A surety paid a judgment against his principal, for which he was bound. The principal having prosecuted a writ of error and obtained a reversal, the surety sued the plaintiff in the judgment, to recover back the money paid by him: *Held*, that the action does not lie: the remedy of the surety is against his principal.

Where one person advances money for another, in payment of the debt of the latter, it is deemed, at the instant of its payment, to be the money of the party for whose benefit the payment is made; so that in the eye of the law, the debt is satisfied, not by the money of a third party, but by that of the debtor himself. Per SELDEN, J.

APPEAL from the Common Pleas of the city and county of New York. The plaintiff sued, as assignee of one Patten, for

money had and received by the defendant, to the use of Patten, under these circumstances: In 1846, the defendant, Martin, having obtained a judgment in the Superior Court of New York city, against Cornelius Kanouse; the latter sued out a writ of error to the Supreme Court, and Patten, as his surety, executed with him a joint and several bond, conditioned for the prosecution of the suit in error, and for paying the judgment and costs in case of affirmance. The judgment was affirmed by the Supreme Court, and action being brought upon the bond against Patten, he paid the original judgment, with the costs of the suit in error. Kanouse, however, brought error to the Supreme Court of the United States, by which the judgment of affirmance in the Supreme Court of this State was reversed, and the cause being remanded, the original judgment was reversed. Upon these facts, the plaintiff claimed to recover back the money thus paid by Patten, whose demand had been assigned to him. The defendant demurred. The demurrer was overruled, and judgment ordered for the plaintiff, which having been affirmed at general term, the defendant appealed to this court.

*J. M. Martin*, for the appellant.

*J. B. Staples*, for the respondent.

Selden, J. The law, no doubt, will imply a promise to refund money paid upon a judgment which has been subsequently reversed; but the question here is whether, in a case like this, the implication arises in favor of the surety who paid the money, or of the principal for whose benefit it was paid, and whose debt it went to discharge

This question is not without difficulty. It is insisted by the appellant, and as I think justly, that no privity existed between Patten, the surety, and the plaintiff in the judgment; and hence, that no implied promise can arise between them. The execution by Patten of his bond to Martin, did not, in my judgment, create any legal privity between the parties;

not, as urged by the appellant, for the reason that the bond was statutory, and therefore not voluntary, but because Patten was a mere surety, acting not for himself, but for and in behalf of his principal, between whom alone, and the plaintiff in the judgment, did any actual legal privity exist.

This will be rendered more apparent, by a consideration of the relations of the parties, and the necessary consequences of their acts. As the money, when paid, went to discharge what was then the debt of Kanouse, it would seem that at the moment of its application it must have been the money of Kanouse.

But let us suppose the contrary, and that the money is deemed to have been paid as the money of Patten, the surety, and consequently, that when the judgment was reversed, a cause of action arose in favor of Patten to recover it back. What effect would a subsequent re-payment of the money by Kanouse to Patten have upon this cause of action? It could not, of course, continue in favor of Patten. It must either be extinguished, or transferred to, or in some way vested in Kanouse. But, how could it become vested in the latter? The law upon our supposition has previously implied, that the money was had and received by the plaintiff in the judgment, to the use of Patten, the surety. Will it now, after the reimbursement of the surety by his principal, raise a second implication in favor of the latter, that it was had and received to his use? I apprehend not; there can be but one such implication, and that must be in favor of the party to whom the money is decreed legally to belong, at the instant of its payment. If this be so, then a supposition, which leads to the conclusion, that a principal cannot under such circumstances fulfill his own obligations, by reimbursing his surety, without losing all power of obtaining restitution, must be erroneous.

Again, it is clear, that the payment of the money by Patten, to the plaintiff in the judgment, operated *eo instanti,* to create a valid demand in favor of Patten, the surety, against Kanouse, the principal, for the amount so paid. What effect, then, had the reversal of the judgment upon this demand? It certain ?

could not extinguish the claim of the surety against his principal, for the money advanced. Nothing short of re-payment, or satisfaction obtained in some way, could do that. Patten's cause of action against Kanouse, therefore, must have continued, notwithstanding the reversal of the judgment. But upon the theory of the plaintiff here, he acquired also by the reversal a cause of action against the plaintiff in the judgment. If so, then Patten from the time of the reversal, supposing that he had not been already paid, had a double remedy for the money he had advanced; one against Kanouse, and the other against Martin, the plaintiff in the judgment; and might, of course, have brought and prosecuted suits against each at the same time. To maintain the suit against Kanouse, it would be necessary to allege and show that the money had been paid for his use and benefit; while to maintain that against Martin, it must appear that it was received by him for the use and benefit of the plaintiff, Patten; and the courts would be called upon to render these two inconsistent judgments, in regard to the same identical transaction, if the theory of the plaintiff is sound.

These are some of the incongruities which stand in th way of the plaintiff's recovery. But if, on the other hand, we take the opposite ground, the case is simple and free from all complication. The surety must look to his principal, for whom he has consented to advance the money and on whose credit alone he has acted; and the principal only can obtain restitution.

The difficulty is solved by assuming this principle, which I am inclined to think is sound, viz.: that where one person advances money for another, in payment of the debt of the latter, it is deemed at the instant of its payment, to be the money of the party for whose benefit the payment is made; so that in the eye of the law the debt is satisfied, not by the money of a third party, but by that of the debtor himself.

How can the money of A discharge the debt of B? Could B, if sued for the debt, plead payment by A? Clearly not; he must plead that he himself has paid. If A pay the money without the request of B, either express or implied, A acquires

no right of action against B, and the debt is not thereby dis-
charged; although a subsequent assent on the part of B might
give effect to such payment. If the three were together, and
A should hand the money to B, who should instantly hand it
to the creditor, there would be no doubt that it was the money
of B, when applied upon his debt. But suppose, instead of
passing the money through the hands of B, A, at his request,
gives it to the creditor, is it not the same in legal effect? Is
it not still B's money which pays B's debt? I think it is, and
that A must look exclusively to B for reimbursement, as much
in the one case as in the other—whatever may occur in regard
to the debt, as between B and the creditor. The case here is the
same as if the money had been paid at the special request of
Kanouse; because it is well settled, that where one pays money
as surety for another, the law implies a request. (*Exall* v.
*Partridge,* 8 *Term R.,* 308; *Pownal* v. *Ferrand,* 6 *Barn. & Cres.,*
439; *Butler* v. *Wright,* 20 *John.,* 367.)

There can be no better test of what has been said, than to
inquire, whether at common law a declaration for money lent,
could have been maintained by Patten against Kanouse; and
as to that, I entertain no doubt. In *Butcher* v. *Andrews* (1
*Salk.,* 23), the plaintiff had delivered money to a son at the
request of his father. He brought an action against the father,
and declared for money lent to the son. This was held bad.
The court said the same money could not be "lent to two,"
plainly implying, that the declaration should have been for
money lent to the father.

So in *Marriot* v. *Lister* (2 *Wils.,* 141), when the declaration
was for money "lent and advanced by the plaintiff to James
Dalrymple, at the special instance and request of the defend-
ant," the court held, that if the money was lent to James
Dalrymple, it could not have been lent to the defendant, and
gave judgment against the plaintiff. The inference is, that
the plaintiff ought to have declared for money lent to the
defendant.

The case of *Bull* v. *Sibbs* (8 *Term R.,* 328), shows very
clearly, how this question would then have been regarded by

court of King's Bench. The action was brought to recover for the use of certain lands, which the plaintiff, at the defendant's request, had permitted one Ditchell to occupy. The court, by way of illustration, say: "When goods sold, are by order of the vendee delivered to a third person, an action may be maintained, on the common counts, as for goods sold and delivered *to the vendee* himself; though, *in practice*, it is generally stated, that the goods were delivered to such third party, at the request of the vendee."

The case here put is parallel to ours, and depends upon the same considerations. It can make no difference, whether the thing delivered is goods or money. Where the contract is with one and the delivery to another, it is not necessary in pleading to notice the latter; although, as the court said, in *Bull* v. *Sibbs*, in respect to goods sold, "in practice," where money is delivered to a third person, at the request of another, in payment of a debt of the latter, it has been usual to declare for so much money paid to the person receiving it, for the use of the party making the request.

That the title passes in every such case directly to the latter, in the first instance, and that the money is in fact lent to him, is evident. If, instead of being paid upon a debt, the money is received by the third party upon some trust, for the benefit of the party requesting the delivery, then of necessity the title must pass to the latter. It is equally plain, that it must do so when the third party has agreed to repay the money to the party at whose request it is delivered to him. The latter could in that case himself maintain an action for money lent; and he could not lend another's money. What difference can it make, that the money is delivered in payment of a debt of the party requesting such delivery? What has the person, who parts with his money in such a case, to do with the relations between the other two? His contract is solely with one of those parties, and is the same, whatever may be the object for which the money is delivered. In each case he loans the money, and the title passes directly to the borrower.

This must be so, as well where the request is implied, as in case of money paid by a surety, as where it is express.

It thus appears, that the defendant derived his title to the money in question, not from Patten, but from Kanouse; and, consequently, that when his right to the money was subverted by the reversal of the judgment, he could only be responsible to Kanouse, whose rights were thereby revived.

The judgment of the Common Pleas, therefore, should be reversed, and judgment should be rendered for the defendant upon the demurrer.

JOHNSON, Ch. J., DENIO, GRAY and GROVER, Js., concurred. STRONG and ALLEN, Js., dissented; and COMSTOCK, J., expressed no opinion.

*Judgment reversed.*