JULIUS LIPMAN et al., Respondents, *v.* THE JACKSON ARCHI-
TECTURAL IRON WORKS, Impleaded, etc., Appellant.

In an action for the foreclosure of a mortgage it appeared that $55,000,.
the amount to secure which the mortgage was given, was by its terms.
to be advanced to the mortgagors in seventeen specific installments,
dependent upon different stages of the work of constructing a building
upon the mortgaged premises, which was to be the chief security for ·
the loan. When the advances amounted to about $40,000 a lien for
materials furnished and services performed was filed. The mortgagees
thereupon declined to make any further advances, and a contract was
"then entered into by which the lienor agreed to subordinate its lien to
the further advances called for by the mortgage, and the mortgagees
agreed to pay said lien in specified proportions out of the fifteenth and
sixteenth installments when they should be earned and become due,
and they accepted an order upon them payable out of said installments
when due. The mortgagors never earned or became entitled to
these installments, but the mortgagees advanced to them the amount
secured by the mortgage, and $10,000 more, less the amount of the
lienor's claim, to be used in the prosecution of the work, under an agree-
ment with said lienor that the claim should be paid out of said $10,000.
The lienor was made defendant, but no personal judgment asked
against ·it ; it set up its claim as a counter-claim and asked for a money
judgment. The counter-claim was dismissed. A judgment of fore-
closure and sale was ordered for the amount of the mortgage and
interest, and the surplus ordered to be brought into court. *Held,* no
error; that the judgment was in accordance with and awarded only the
relief agreed upon by the parties; that whatever claim said lienor might
have it was not a permissable counter-claim (Code Civ. Pro. § 501.)
Also *held,* that plaintiff's objection to the counter-claim was not waived by
the omission to demur or specifically object thereto by answer; that the
provisions of the Code of Civil Procedure providing for such a waiver
(§§ 498, 499), relate only to defects in the complaint and a waiver by the
· defendant.

(Argued May 7, 1891; decided June 2, 1891.)

APPEAL .from judgment of the General Term of the
Court of Common Pleas for the city and county of New York,
entered upon an order made February 2, 1891, which affirmed
a judgment in favor of plaintiffs, entered upon the report of ·
a referee.

This was an action for the foreclosure of a mortgage executed by the defendants, William A. Mathesius and Isabella C. Anderson, to plaintiffs to secure the payment of $55,000, which was to be advanced from time to time as the buildings upon the mortgaged premises approached completion.

The defendant, The Jackson Architectural Iron Works, under contract with said mortgagors, performed work upon and furnished materials for said buildings, and not being paid, filed a mechanic's lien upon the premises.

The facts are sufficiently stated in the opinion.

*Henry R. Beekman* for appellant. The order drawn by Mathesius and Anderson on the plaintiffs, and accepted in writing by them constituted in law an assignment *pro tanto* of the moneys which were to become payable to Mathesius and Anderson on account of the advances yet to be made to them by the plaintiffs under their contract and secured by said mortgage for $55,000; and the Jackson Architectural Iron Works, upon receiving such order, so accepted, thereupon became entitled as assignee to so much of the moneys, there-after to be advanced on the bond and mortgage in suit, as would be equivalent to the amount of the order and interest. (*Brill* v. *Tuttle*, 81 N. Y. 454; *Risley* v. *Smith*, 64 id. 567; *Risley* v. *Indianapolis, B. & W. R. R. Co.*, 62 id. 240; *Galla-gher* v. *Nichols*, 60 id. 438; *Lowery* v. *Steward*, 25 id. 239.) The plaintiffs, in advancing to Mathesius and Anderson the whole of the amount secured by the $55,000 mortgage, violated the duty they owed to the Jackson Architectural Iron Works, to retain the portion of the loan affected by the equitable assign-ment in its favor by virtue of said accepted order. (*Gibson* v. *Lenane*, 94 N. Y. 183.) The plaintiffs, by voluntarily paying to the defendants Mathesius and Anderson the whole of the loan of $55,000, waived the conditions of the building loan contract, which provided that the fifteenth and sixteenth installments of the loan should become payable only when certain specified work had been done on the building. (*Risley* v. *Smith*, 64 N. Y. 576.) The right of the defendant to interpose a counter-

claim based upon the accepted order cannot now be questioned. (*Bathgate* v. *Haskin*, 59 N. Y. 533; *Hunt* v. *Chapman*, 51 id. 555.)

*E. A. Jacob* for respondents. The doctrine of equitable assignment does not entitle appellant to payment of the orders. (*Brill* v. *Tuttle*, 81 N. Y. 454.) The counter-claim of appellant was properly dismissed. (Code Civ. Pro. § 501; *N. Y. Ins. Co.* v. *McKay*, 21 N. Y. 191.)

FINCH, J. We need not consider the question whether the contracts between the parties destroyed the effect of the mechanic's lien filed by the creditor company, or merely subordinated that lien to the plaintiffs' further advances and preserved to the lienor a right to participate in a surplus resulting from the sale, because in either event we are required to affirm the judgment. The lienor has been defeated upon the ground that, as against the mortgagees, its debt is not yet due and payable, since the express condition upon which payment was promised has not been fulfilled. The contract of the mortgagees with the owners was to make the advances in specific installments, dependent upon different stages of work done in the construction of the building. That building was to be the main and chief security for their loan, and it was necessary to their safety that the advances in general should not outrun the progress of the work, but should keep always behind it, in order that there might be existing value mortgaged at each added installment of the loan. Two of these installments were numbered the fifteenth and sixteenth. By the terms of the former, the sum of six thousand dollars was to be advanced "when the plumbing work is nearly completed, all doors hung, elevators and steam apparatus nearly completed, and all sashes in." By the terms of the latter, five thousand dollars was to be advanced "when railings and balusters completed, hardware all in, glazier's work completed, front area work done, sidewalks and yards laid and cellars concreted." The whole advances originally contemplated amounted to fifty-five thou-

sand dollars.   Before the fifteenth and sixteenth installments had been earned, and when the advances amounted to about forty thousand dollars, the appellants filed their lien.   In presence of that emergency, the advances stopped, and the mortgagees declined to continue them until some arrangement of the incumbrance was made.   The three parties thereupon executed the first contract.   Under its provisions the mortgagees were made safe by the agreement of the lienors to subordinate their lien to the further advances to be made under the protection of the mortgage ; and the lienors were provided for by the mortgagees' promise to pay the amount of the lien when the fifteenth and sixteenth installments should be earned by the builders and become due to them.   This last arrangement took the form of an order drawn by the builders upon the mortgagees directing them to pay "out of the moneys growing due to us," eight hundred dollars "out of the fifteenth installment, payable according to the terms of said contract," and two thousand and seventy-nine dollars " out of the sixteenth installment," and which was accepted by the mortgagees, "payable as above."   Their promise, therefore, was explicitly conditioned upon the earning of the two installments by the builders, which could only be done in accordance with the specified requirements.

Now, that work has never yet been done.   The builders have not earned the fifteenth and sixteenth installments, or become entitled to receive the sums for which they provided. If nothing else had happened, it would follow inevitably that the fund, out of which the lienors were to be paid, as a fund due and payable to their debtors, never in fact accrued or came into existence ; and since the lienors, in making their lien subordinate, had accepted the promise of the mortgagees to pay only when the two installments became due according to the terms of the building contract, the latter were bound to pay only when those terms were fulfilled.

But something else *did* happen.   The mortgagees advanced to the builders not only the full fifty-five thousand dollars, but some part of ten thousand dollars more, and yet with all that

assistance the latter never carried the building to the stage of completion which made due and payable the fifteenth and sixteenth installments. But the lienors claim that those installments, having been paid to the builders, must be deemed to have become due and payable, and that the prior completion of the work represented by those installments was waived by the mortgagees. There is some force in that contention, and if it should turn out that the mortgagees never advanced of the final ten thousand dollars the full amount less the lienor's claim as was agreed, it might with even more force be argued that if such advances had been made, the work in arrears would have been performed, and that the mortgagees could not stop their promised aid and resort to a foreclosure so as to prevent the completion of the work and yet rely on that failure of completion to avoid performance of their promise.

But, while they may be liable on their acceptance, and we do not determine that question either way, I am convinced that the remedy of the lienor is not in this action, and that the judgment rendered was right. It orders a foreclosure, cuts off the lien of the creditor, gives to the mortgagees a preference of payment from the proceeds to the full amount of the fifty-five thousand dollars and interest, and orders any surplus arising on the sale to be brought into court. To all that the lienors explicitly agreed, for they consented that their lien should be subordinated to that of both mortgages, and that the whole fifty-five thousand dollars should be advanced under the shelter of that consent. Beyond that, they consented to the further advance of ten thousand dollars, less the amount of their claim, to be used for some of the very purposes covered by the fifteenth and sixteenth installments of the building contract, for these also respected the plumber's work and trim of the building. So far, the appellants cannot successfully question the judgment, for it is in exact accord with the contracts and awards only the relief which it agreed should be given. It is the mortgage for fifty-five thousand dollars and that alone which is being foreclosed, and against that the appellant has no lien and no defense. Whatever may prove to be

its rights in the proceeds of sale, they must necessarily exist only against a possible surplus, and nothing in the judgment cuts off any such rights or bars the appellant from an application to share in its distribution.

It is true that the counter-claim pleaded was dismissed, but that result was necessary because, whatever its merits, it was not a permissible counter-claim in the action for foreclosure. It set up a legal cause of action on the acceptance and against the acceptors as such, and asked a money judgment against them. Assuming, which we do not decide, that the plaintiffs were thus liable on their acceptance, the debt was not the subject of a counter-claim in the equity action. The plaintiffs demanded no personal judgment against the appellant, and so the claim of the latter could in no manner lessen or limit or cut down the relief which the plaintiffs sought and to which they were clearly entitled. The Code of Civil Procedure requires that the counter-claim must tend in some way to diminish or defeat the plaintiff's recovery (§ 501), and enacts in this respect the doctrine of *National Fire Ins. Co.* v. *McKay* (21 N. Y. 191). The defendant's plea has and can have no such effect. Its alleged lien as a lien was subordinate to that of the plaintiffs, and its debt as a debt could not diminish or defeat the plaintiffs' relief upon their cause of action. The lien was no defense and the debt no counter-claim. Proof of the latter could only result in an independent judgment for money, having no effect whatever upon the foreclosure. The application of the doctrine is well illustrated in *Hunt* v. *Chapman* (51 N. Y. 555). In that case the counter-claim was allowed, but because the plaintiff asked a judgment upon the bond for a deficiency against the defendant asserting the counter-claim, and the claim of the latter became simply contract against contract, and if allowed would defeat or diminish the plaintiffs' recovery. Here, no personal judgment is sought against the appellant and there is nothing upon which its claim can be applied, or which it can possibly affect.

It is said that plaintiffs, not having demurred to the counter-claim or specifically objected to it by answer, have waived the

objection.    The section of the Code providing for such waiver
relates only to defects in the complaint and a waiver by the
defendant.    (§§ 498, 499.)    The appellants requested a find-
ing of law awarding judgment on the counter-claim, which the
referee refused.    The respondents may defend that refusal
upon the ground asserted, as well as that upon which the
referee seems to have acted.

For these reasons, the judgment should be affirmed, with
costs.

All concur.

Judgment affirmed.  ——————————