[No. 25242. *En Banc.* February 11, 1935.]

J. W. MAXWELL, *Appellant,* v. PROVIDENT MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA, *Respondent.*[1]

[1]Reported in 41 P. (2d) 147.

*Almon Ray Smith* and *Charles E. Congleton,* for appellant.

*York & York,* for respondent.

MILLARD, C. J.—Plaintiff purchased certain Seattle real property subject to a mortgage; that is, he did not assume payment of the mortgage debt. Plaintiff sold the property back to his grantors on an installment sale contract. He made a written offer to pay $1,106.90, and delivered his check therefor, to defendant mortgagee of the property in consideration of extension of time of certain payments until maturity of the mortgage four years later. The mortgagee immediately cashed the check, and twenty-four days thereafter made a written counter-proposal, to which plaintiff never replied. The time of payment of the installments, in consideration of which plaintiff paid $1,106.90 to defendant mortgagee, was not extended to date of maturity of the mortgage. Within ten months following its counter-proposal, defendant mortgagee foreclosed the mortgage.

One year subsequently, on the ground that the consideration therefor had failed, plaintiff instituted this action against defendant mortgagee to recover the conditional payment of $1,106.90. Defendant denied that the money was paid conditionally, and as an affirmative defense pleaded the foreclosure decree as *res adjudicata* of the present action. Finding in favor of the defendant on the grounds of estoppel and *res adjudicata,* the trial court said:

"I have decided to rest my decision on two counts—that of estoppel and *res adjudicata.* The plaintiff remained silent when he should have spoken. He knew, or should have known, that the plaintiff in the fore-

closure suit (defendant in this suit) had credited him with this payment of $1106.90, and he should have asserted his defense, if any, in that suit. At no time until this suit was instituted was any demand made by plaintiff for a return of this money. He is therefore estopped. This foreclosure suit, and the findings, conclusions and judgment entered therein, are *res adjudicata* of the claim sought to be recovered in this action. This doctrine of *res adjudicata* applies, in my opinion, with equal force whether the defendant appeared and contested the suit, or withdrew his appearance and allowed judgment to go by default. . . . The rule is that in an action between the same parties, a judgment therein is *res adjudicata* as to all points in issue, and also all points that might have been raised and adjudicated. . . . The mere fact that J. W. Maxwell, plaintiff in this suit, did not tender the issue as to the $1106.90 in the foreclosure suit can afford him no relief in this suit for the reason that he had the opportunity to tender such issue but formally withdrew his appearance and defaulted.''

Judgment of dismissal was entered. Plaintiff appealed.

Counsel for respondent contend that payment by appellant was a voluntary payment, which can not be recovered; that appellant's acquiescence, until the commencement of this action, in respondent's application of the payment differently from the direction of appellant, precludes impeachment of the transaction; and that all questions as to the application of the payment to satisfaction of interest then due on the mortgage were adjudicated and foreclosed by the foreclosure action.

The facts, which are as follows, clearly show that the money was conditionally paid by appellant to respondent for an extension of time of payment of two installments of the principal; that such extension of time was not made; that appellant is not, by acquiescence in or assent to respondent's application of that

money differently from appellant's direction, estopped to question such use of the payment; and that the judgment in the foreclosure action is not *res adjudicata* of appellant's right to a recovery in this action.

Rose Blyer and husband purchased an apartment house in Seattle from Stephen Berg. On October 14, 1925, the Blyers made and delivered to respondent eight negotiable promissory notes for a loan of $45,000. The notes were payable in seven annual principal installments of $2,500 each, commencing October 14, 1928, and one installment of $27,500 payable October 14, 1935, with interest payable semi-annually. To secure the payment of their notes, the Blyers executed and delivered to respondent a mortgage on their apartment house.

By their deed, which was placed of record October 19, 1925, the mortgagors (Rose Blyer and husband) conveyed the title to the mortgaged property to appellant, subject to the mortgage of $45,000. That is, there was no assumption by appellant, Blyers' grantee, of the mortgage debt. Appellant thereupon transferred the apartment house to the Blyers on an installment contract of sale, Berg's interest therein being acquired by appellant. At the time of the foreclosure of the mortgage, to which we will refer later, there was a balance of $15,000 due to appellant on the contract.

We gather from the testimony of appellant that he bought the contract under which the Blyers purchased the property from Berg; that, for the purpose of financing the purchase, the property was transferred to the Blyers, who borrowed thereon $45,000 from respondent; that the Blyers deeded the property to appellant subject to the mortgage; and that appellant then sold or resold the property to the Blyers on an installment sale contract. It should be borne in mind that the property was conveyed to appellant subject to

the mortgage to respondent, but that there was no assumption or agreement on the part of appellant to pay the mortgage.

The record shows that the Blyers, who alone were obligated to pay the mortgage, were at all times in possession of the property until shortly prior to foreclosure of the mortgage, when they transferred their contract to Oka Hannam, who took, and remained in, possession of the apartment house until foreclosure of the mortgage. For some time after foreclosure, Oka Hannam was in possession of the apartment house as respondent's agent.

The mortgage required punctual payment, when due, of the principal installments, interest and taxes, and provided that, in case of default, the whole mortgage debt should become due, at the option of the mortgagee, and the mortgage foreclosed. The Blyers defaulted in payment of the installments due October 14, 1930, and October 14, 1931. The Blyers also defaulted in the payment of the semi-annual interest of $1,100 due October 14, 1931.

Negotiations between the parties respecting extension of time of payments culminated in a written offer November 18, 1931, by appellant to respondent to pay the semi-annual interest of $1,100 due October 14, 1931, plus interest of $6.90 thereon from due date of October 14, 1931, to date of offer. The offer to pay the overdue interest was conditioned on extension of the time of payment of the two delinquent principal installments to October, 1935, maturity date of the mortgage. The letter making the offer and transmitting the check in payment of the delinquent interest reads as follows:

"Enclosed you will find my check for $1106.90, payable to your order. This check is being sent to you and is to be accepted under the following conditions:

"It is to pay the semi-annual interest on the Rose Blyer $40,000 mortgage that was due on October 14,

1931, together with additional interest on the $1100 from that date until this. This payment is being made only with the understanding that the two payments now due on the mortgage—one for $2500 which was due October 14, 1930 and one for the $2500 due October 14, 1931, are to be extended until the maturity of the note; in other words, to be in a measure, a balloon payment at maturity.

"The taxes are being paid in the same way that they have been the last few years and have every reason to believe that before the next are due, that the 1930 taxes will be paid in full."

The check was cashed immediately by respondent, and the amount thereof applied to the payment of the semi-annual interest due October 14, 1931. However, there was no compliance with the conditions on which the payment was made. Under date of December 12, 1931, twenty-four days after appellant made the conditional payment, the respondent made the following written counter-proposal to appellant:

"I have been very slow in reporting to you in regard to the interest and principal payments in the Blyer case because there has been some little difficulty in arranging just what you want.

"The Company is not willing to extend principal installments where that extension will carry them more than six years beyond the due date, although that six year period might not overreach the maturity of the mortgage and I finally suggested to Mr. Weed and he has agreed as follows:

"He authorizes me to write you that providing during the term of the Blyer mortgage at least $2,500 is paid on account of principal on or before the 14th. day of October of each year beginning 1932 they will apply that $2,500 in payment of the longest over-due principal note and they will not require payment of more than one installment each year. Of course this is providing the other requirements of the mortgage are fulfilled in regard to payment of interest, taxes, assessments etc., and I believe this proposition entirely ful-

fills the conditions on which you made this last interest payment.

"The only other condition that Mr. Weed imposes is that some action be taken very promptly to put the property under competent management. He agrees with me that we should not permit the present condition as to management to exist and he does not feel we should give this definite extension of principal payments unless we are assured that the property will have during that term more reasonable management.

"If this is not satisfactory will you please let me know and oblige."

Appellant did not reply to the foregoing letter. On August 23, 1932, respondent instituted an action against the Blyers, appellant and wife and Oka Hannam to foreclose the apartment-house mortgage. The action was based on the failure of the Blyers (the mortgagors) and the other defendants to pay the two principal installments of $2,500 each, which became due October 14, 1930, and October 14, 1931, and the failure to pay the semi-annual interest which became due April 14, 1932. Alleging that any right, title, interest or lien which the defendants claim to have to or upon the mortgaged premises was subject and subordinate to the lien of its mortgage, respondent prayed judgment against Rose Blyer and her husband for the sum of $40,000, with interest thereon from October 14, 1931, attorney's fees and costs.

The Blyers defaulted in the action. Appellant entered his appearance by his attorney, but thereafter withdrew the appearance, and an order of default was entered against all of the defendants. Findings of fact and decree in conformity to the complaint were entered September 22, 1932. On that decree, an order of sale was issued and the mortgaged property sold at sheriff's sale to the respondent in satisfaction of its judgment. The allegation of the complaint as to the

amount due and the prayer for recovery thereof show that the payment of $1,106.90 by appellant to respondents in November, 1931, was applied in satisfaction of the semi-annual interest due on the mortgage October 14, 1931. In October, 1933, as recited above, appellant instituted this action against respondent for money had and received in the amount of $1,106.90.

It is a well-settled general rule, as respondent contends, that, in the absence of a statute to the contrary, a person can not

". . . either by way of set-off or counterclaim, or by direct action, recover back money which he has voluntarily paid with a full knowledge of all the facts, and without any fraud, duress, or extortion, although no obligation to make such payment existed." 48 C. J. 734-736, § 280.

It is likewise a well-settled rule that, where a debtor directs the manner in which his payment is to be applied, the creditor, if he accepts the payment, must apply it accordingly. The application of the payment can not be diverted without the consent of the debtor. If the creditor qualifies his acceptance by attaching conditions thereto, or if he applies the payment differently from the direction of the debtor, the debtor will be bound thereby if, by acquiescence or other acts, he indicates his acceptance of the condition, or his ratification of the creditor's application. However, mere silence or a failure to object after knowledge of the creditor's diversion to other accounts is not, in itself alone, acquiescence by the debtor, within the meaning of the rule. 48 C. J. 646-647.

In *Ballantine & Sons v. Fenn and Fenn,* 88 Vt. 166, 92 Atl. 3, it was held that the failure of a buyer to object to the application of payments contrary to his direction was not a ratification of such application, for, since he had already directed a designated application,

he could not be compelled to repeat his directions. The court said:

"We need not consider what the effect would be if it were found that the applications made by the petitioner were in fact as originally agreed by the parties, for this fact is not found. The finding that the applications were made .by the petitioner 'in accordance with the original understanding and agreement of said parties, and the state of said accounts,' includes an element not within the understanding and agreement, namely, 'the state of said accounts.' If the petitioner would justify the applications made, on the ground of an original understanding and agreement of the parties, it must show them made in accordance therewith, independent of any additional, and perhaps controlling, element of consideration.

"It is found in effect, however, that by way of the monthly and annual statements from the petitioner to the debtor, and by the notations on the checks returned to him, after payment, by the bank on which they were drawn, the debtor subsequently had notice of the various applications made by the petitioner, and that he made no objection thereto until after the commencement of this suit. Yet such silence on his part is not sufficient to show a ratification by him of the applications made on the account of Ballantine & Company, another creditor, to say nothing of the rights of the surety. In *Eylar v. Read,* 60 Tex. 387, it was held that if the debtor, at the time of paying money to his creditor, directed it to be appropriated to the payment of a certain debt, secured by lien on the debtor's homestead, the fact that he was afterwards given a receipt by the creditor, declaring the money was received on 'general account,' did not make it incumbent upon the debtor to take steps to have the receipt changed, or in default of such action be precluded from .insisting that the money be appropriated as directed; that his silence after he had once spoken and directed, as the law authorized him to do, that the money be appropriated in a certain way, could not confer upon the creditor any right to divert it; that nothing less than

the consent of the debtor can confer such right after he has once directed to what the application be made.''

In *Blaisdell Filtration Co. v. M. L. Bayard & Co.,* 311 Pa. 6, 166 Atl. 234, it was held that the assumption that one by silence accepts a counter-offer, is unsound; that a counter-offer, like offers in general, requires acceptance to make a binding contract; and that the mere failure to reply to a letter transmitting a counter-offer does not operate as an acceptance of the counter-proposal.

Appellant was not personally liable on the mortgage notes. While he had a large investment to protect, he was under no obligation to pay any part of the mortgage indebtedness, the interest thereon or other charges. He was at liberty to tender the interest payment due subject to any conditions pleasing to him. The acceptance of the payment carried with it acceptance of the condition of the payment—extension of the time of mortgage installments. Respondent retained appellant's money, but did not extend the time of payment of the two installments of the principal. Appellant made a payment upon a consideration which failed, therefore appellant was entitled to a recovery of the money paid by him to respondent. 48 C. J. 768-769. If payment is made on condition, but the condition is not fulfilled, the amount paid may be recovered back. *Conway v. Grand Chute,* 162 Wis. 172, 155 N. W. 953.

Appellant tendered payment of the interest on condition of extension of time of payment of two of the mortgage notes. A new contract would have come into being had respondent accepted the offer. Rejecting appellant's offer, respondent made a counter-offer. The new contract proffered by respondent could not bind appellant until his acceptance thereof, and, as stated above, his failure to reply to the letter trans-

mitting the counter-offer did not operate as an acceptance of the counter-proposal.

"It is well recognized, when a party to a contract is to become bound by his acceptance thereof, that any change in any of the material stipulations or the injectment of new stipulations, is a rejection of the contract as offered, and the proffer of a new contract, to which the other party is not bound until his acceptance thereof." *Bridge v. Calhoun, Denny & Ewing,* 57 Wash. 272, 106 Pac. 762.

We have quoted above the view of the trial court that appellant "remained silent when he should have spoken and he failed to do so," therefore he is estopped from questioning the application of his payment to satisfaction of interest due on the mortgage.

"It is the rule, no doubt, that, when a person is silent concerning a fact under circumstances which make it his duty to speak, and another, in ignorance of the fact, acts thereon in a manner he would not have done but for such silence, the first party will not thereafter be heard to assert the fact to the other party's injury. But to make silence operate as an estoppel or as a disclaimer of interest, the circumstances must have been such as to make it a legal duty to speak." *Proctor v. Appleby,* 110 Wash. 403 (419), 188 Pac. 481.

Respondent accepted appellant's money, and was legally obligated to grant the extension in consideration of which the payment was made, or return the money. We know of no obligation on appellant to reply to respondent's letter of December 12, 1931, making a counter-proposal. Appellant's silence or failure to reply to the counter-proposal did not mislead respondent to its injury. Respondent suffered no financial loss by reason of appellant's silence. No benefit was derived by appellant from respondent's forbearance to foreclose its mortgage from December, 1931, to April, 1932 (a period of four months), when

the semi-annual interest became due. Four months later, the foreclosure action was commenced. A forebearance of four months, April to August, 1932, was not a compliance with the condition of extension of payment, the consideration for the payment.

In refusing appellant's condition but keeping his money, the respondent placed appellant at a disadvantage. He could not demand return of his money, apprehending foreclosure. The retention of the money, but refusal of the condition on which it was paid, hardly places respondent in a position to urge delay or laches on the part of appellant in demanding return of his money.

"It is not for a wrongdoer to impose extreme vigilance and promptitude as conditions to the exercise of the right of the person injured." 21 C. J. 229-230.

In *Troyer v. Fox*, 162 Wash. 537, 298 Pac. 733, 77 A. L. R. 1132, we said:

"Appellants did not accept that offer. If that offer received no response, appellants' silence cannot be construed as an acceptance. Mere silence when an offer is made does not constitute an acceptance of the offer. The failure to reject an offer is not equivalent to assent."

The following language in *Columbia Malting Co. v. Clausen-Flanagan Corporation*, 3 Fed. (2d) 547, is applicable in the case at bar:

"One to whom an offer is made must either accept it or reject it. And if he does not accept it he necessarily rejects it. If he introduces a new term into the offer, he in effect offers a counter proposal. . . . The defendant's silence is not to be regarded as any assent upon its part. Silence is not assent, unless there is a duty to speak, and there was no such duty in this case. In Williston on Contracts, vol. 1, § 91, the rule is correctly laid down as follows:

" 'Generally speaking, an offeree has a right to make no reply to offers, and his silence and inaction

cannot be construed as an assent to the offer.' . . . When an offer is made to one who remains silent, the silence may be due to a variety of causes. It is clear that, whatever may have been the offeree's state of mind, no contract can be made unless the offer stated that the offerer would assume assent in case the offeree made no reply. But if the offer does so state, the offeree's silence is ambiguous, and may doubtless be shown not to have meant assent. Certainly the offeree has the right to keep silent if he chooses without thereby becoming charged with a contract.''

See, also, *Roethemeyer v. Milton,* 177 Wash. 650, 33 P. (2d) 99; *Prescott v. Jones,* 69 N. H. 305, 41 Atl. 352; and 13 C. J. 276.

Respondent was not misled, to its injury, by appellant's failure or refusal to reply to respondent's letter of December, 1931, transmitting a counter-proposal. It follows that respondent may not successfully urge estoppel as a bar to recovery by appellant.

''There is nothing in this record to show . . . that respondent, did, or refrained from doing, anything because of appellant's failure . . . nothing to show that respondent was in any way misled to its injury.

'' 'An estoppel operates only in favor of those who have been misled to their injury . . .' *Inland Finance Co. v. Inland Motor Co.,* 125 Wash. 301, 216 Pac. 14.

''Mere silence, to constitute an estoppel, must have operated as a fraud, and must have actually misled to the injury of the party invoking estoppel.'' *Spokane Valley State Bank v. Murphy,* 150 Wash. 640, 274 Pac. 702.

■ The doctrine of *res adjudicata* applies with equal force whether the defendant appeared and defended the action or allowed the judgment to go by default. *Judish v. Rovig Lumber Co.,* 128 Wash. 287, 222 Pac. 898.

■ It is argued by counsel for respondent that the

question of its right to apply and retain as interest the money paid by appellant as interest due on the mortgage, respondent's liability to a demand to return the money, which would increase the amount of the mortgage debt unpaid, was not litigated in the foreclosure suit, as it might or should have been, therefore the judgment in the foreclosure action is *res adjudicata* of appellant's right to recovery in this action.

"It is also a general rule that parties to an action must present all the facts and raise all the issues which may be relied upon for a recovery or as a defense; hence the judgment in a case will operate as an estoppel not only as to questions of fact and law which were raised and decided in the action in which the judgment was rendered, but also as to all grounds of recovery or defense which might have been, but were not, presented and passed upon." *White v. Miley,* 138 Wash. 502, 244 Pac. 986.

"It is a general rule that a valid judgment for the plaintiff definitely and finally negatives every defense that might and should have been raised against the action; and this is true, not only with respect to further or supplementary proceedings in the same cause, but for the purposes of every subsequent suit between the same parties, whether founded upon the same or a different cause of action. 'A party cannot re-litigate matters which he might have interposed, but failed to do, in a prior action between the same parties or their privies in reference to the same subject-matter.' " 2 Black on Judgments, § 754, p. 1142.

Appellant's claim being an independent one against the respondent, he was not obliged to plead it in respondent's action to foreclose the mortgage.

"It seems settled by the great weight of authority, in the absence of statute, that a defendant, having a cause of action against a plaintiff wholly independent of the claim and relief sought by the plaintiff in the particular action, is not bound to set up such independent cause of action as a defense in the action, even

though his cause of action is such that he may be permitted to do so, but may bring an independent action to enforce his claim without being subjected to the plea of another action pending or of *res adjudicata* as a defense thereto. In 15 R. C. L. 972, it is said:

" 'The distinction between defenses which are lost if not set up by a defendant and those which need not be invoked by him depends on the closeness of the relationship between the plaintiff's cause of action and the defense. A fact which is impliedly or expressly involved in a judgment is considered merged therein so that it cannot be again litigated, but a separate cause of action will not necessarily be merged, and therefore need not be pleaded as a defense. While a judgment is decisive of the points raised by the pleadings, or which might properly be predicated upon them, it does not embrace any matters which might have been brought into the litigation, or causes of action which the plaintiffs might have joined, but which in fact are not joined or embraced in the pleadings. It is generally held that a set-off may or may not be pleaded, at the election of the defendant; and if not pleaded, the right to sue upon it as an independent cause of action, or to rely upon it in defense to another action by the same plaintiff, is not affected or impaired by a judgment against the defendant.' " *Deaver v. Trahey,* 98 Wash. 63, 167 Pac. 68.

"While it is true that a defendant is bound to bring forward and establish any defense to the plaintiff's cause of action which he may have, or be debarred of urging it in any subsequent litigation, this does not always hold good with respect to an independent claim against the plaintiff, or one which, though connected with the same transaction, is of such a nature that it could be made the basis of a separate suit or would authorize affirmative relief to the defendant. In fact, as a general rule, when the defendant has a claim which he might use as a set-off or counterclaim, he is at liberty to set it up in the first suit or not, as he may choose; and if he does not plead it in that action, he is not precluded from afterwards maintaining a separate

action upon it against the plaintiff.'' 2 Black on Judgments, § 761, p. 1151.

See, also, 34 C. J. 863.

In *Mehlhop v. Central Union Trust Co.*, 235 N. Y. 102, 138 N. E. 751, which is very similar on its facts to, and indistinguishable on principle from, the case at bar, the court of appeals of New York held that plaintiff could recover money paid for mortgage extension not granted, and that the foreclosure judgment was not a bar to recovery of the money. In that case, Haebler, the owner of real estate subject to mortgage, for which debt he was not personally liable, had an indefinite understanding with the mortgagee that the latter would grant a three-year extension if three thousand dollars were paid on account. Before the extension contract was executed, Haebler sold the property to plaintiff, who, when the written documents were received, changed them by inserting his name and address for those of Haebler, and plaintiff's signature was added. The documents, together with certified check covering the three thousand dollars were left with the mortgagee, who collected the check, but refused either to sign the extension without Haebler's signature thereto and Haebler's assumption of the debt, or to repay the three thousand dollars. The court said:

"He gave notice that the $3,000 had been paid in fulfillment of one of the terms of a proposed contract of extension, and that if the company was not satisfied with the contract as tendered, the money must be returned. The defendant refused either to sign or to repay.

"An action of foreclosure followed. The plaintiff in that action, the defendant here, alleged in its complaint that $3,000 had been paid on account of the principal, and that the residue of the debt was due. . . .

"We think the money should be repaid. Neither

Haebler nor the plaintiff was personally liable for the payment of the mortgage debt. Each of them was free, if he chose to make tender of something in reduction of the lien, to affix to the tender such conditions as he pleased. *Nassoiy v. Tomlinson,* 148 N. Y. 326, 331 [42 N. E. 715, 51 Am. St. Rep. 695]. A condition was affixed, but the defendant has ignored it. The money was tendered, not in fulfillment of an existing duty, but as the price of a promise to be given in exchange for it. When the promise was withheld, the consideration for the payment failed (2 Williston on Contracts, § 814). The defendant, upon rejecting the condition, should have restored what it received. We see no force in the suggestion that restitution, if due at all, is due to Haebler and not the plaintiff. The money came to the defendant through the certified check of the attorney, Mr. Cohn, who tendered it in behalf of the plaintiff, the owner of the property. How the plaintiff came by it, whether through a loan from Haebler or otherwise, is irrelevant. (*Garr v. Martin,* 20 N. Y. 306; *Matter of Dunfee,* 219 N. Y. 188, 190 [114 N. E. 52]). The tender was his, and to him is owing the return.

"The judgment in the foreclosure suit is pressed upon us as a bar. We cannot give it that effect. The only question at issue in that suit was whether the transaction had resulted in an extension of the mortgage. If it had, the suit was premature. The adjudication was that the treaty for an extension had never ripened into a contract. The plaintiff, far from questioning that fact, stands upon it to-day as the basis of his action. His grievance is that although the contract was inchoate, the money is retained. The grievance is not shown to be unreal by the finding that the money was a payment on the mortgage. A payment undoubtedly it was, though in consideration of something else. The question now is whether the payment is to be surrendered or withheld. No such question was before the court in the foreclosure suit. There was no attempt to answer it, and the attempt, if made, would have been abortive. 'The rule is that a judgment does not work an estoppel as to unessential facts, even though

put in issue by the pleadings and directly decided.'
*(Silberstein v. Silberstein,* 218 N. Y. 525, 528 [113 N. E.
495, 496]; cf. *Cauhope v. Parke-Davis & Co.,* 46 Hun
306; 121 N. Y. 152 [24 N. E. 185]; *Campbell v. Con-
salus,* 25 N. Y. 613.) We do not forget that the plain-
tiff has been credited, upon foreclosure, with the
amount of the payment which is the subject of this ac-
tion. The credit was not of his seeking. He did his
best to avoid it by exhibiting the true agreement. If
the creditor persisted in allowing it, the debtor is not
to blame. An answer denying payment, and alleging
the understatement of the sum due upon the lien,
would have been disregarded as a frivolous attempt
to halt and hinder judgment. The owner was not even
in a position to interpose a counterclaim, since he was
not the maker of the bond. *(Lipman v. Jackson Archi-
tectural Iron Works,* 128 N. Y. 58, 63 [27 N. E. 975]).
The upshot may be unfortunate for the holder of the
mortgage. The retention of the money which in good
conscience should have been returned is the cause of
its misfortune.''

The foregoing is an answer to the questions in the
case at bar.

The appellant is entitled to recovery of the money
paid by him for the mortgage extension which was not
granted.

The judgment is reversed, and the cause remanded
with direction to the superior court to render judgment
in harmony with this opinion.

Mitchell, Blake, Holcomb, and Geraghty, JJ., con-
cur.

Beals, J. (dissenting)—In my opinion, a proper ap-
plication of the doctrine of *res judicata* requires the
affirmance of the judgment now before us for review.
As stated by the majority, this doctrine applies with
equal force, regardless of whether appellant appeared
in the prior action or defaulted therein. It is also

undoubtedly the rule, as stated by the majority, that a judgment

"  . . . will operate as an estoppel not only as to questions of fact and law which were raised and decided in the action in which the judgment was rendered, but also as to all grounds of recovery or defense which might have been, but were not, presented and passed upon." *White v. Miley,* 138 Wash. 502, 244 Pac. 986, quoted in the majority opinion.

In the case of *Olson v. Title Trust Co.,* 58 Wash. 599, 109 Pac. 49, it was held that a judgment rendered in favor of a vendor in an action brought by him to quiet title was *res judicata* as to a subsequent action instituted by the vendee for the purpose of recovering the payments made. Applying the doctrine of *res judicata,* this court said:

"Whether the money was paid upon the contract or for the land is immaterial. The money was paid by virtue of that contract, and the action brought by this respondent was for the purpose of enforcing the provisions of that contract, among which was the forfeiture of the money now in controversy as provided in the contract. That was one of the issues. It is plain that, if the right to forfeit this money was not litigated in that action, it should have been, and the rights of the parties thereto finally determined. The rule is that, in an action between the same parties, a judgment therein is *res judicata* as to all points in issue, and also all points which might have been raised and adjudicated. *Sayward v. Thayer,* 9 Wash. 22, 36 Pac. 966, 38 Pac. 137; *Isensee v. Austin,* 15 Wash. 352, 46 Pac. 394; *Spokane Valley Land & Water Co. v. Jones & Co.,* 53 Wash. 37, 101 Pac. 515."

In the case of *Crabtree v. McDaniel,* 143 Wash. 122, 254 Pac. 1092, this court quoted with approval from 34 C. J. 856, as follows:

"It is a general rule that a valid judgment for plaintiff is conclusive not only as to defenses which were set up and adjudicated, but also as to those which

might have been raised; so that defendant can neither set up such defenses in a second action or in further proceedings in the same action, nor can such defenses be used by the former defendant as the basis of a subsequent action against the former plaintiff."

In a later case between the same parties, *McDaniel v. Crabtree,* 148 Wash. 549, 269 Pac. 1040, the doctrine of *res judicata* was considered and applied as to one phase of the case, and not as to another. The rule was held not to operate as a bar to an action upon a promissory note, the holder of the note not having brought the same into an action at law for damages based on alleged false representations which he had theretofore instituted against the maker of the note. It is stated that a different rule would have applied had the prior action been for rescission of an exchange of properties instead of an action at law for damages. It is also noted that the defendant in the prior action interposed only strictly legal defenses. The court applied the principle of *res judicata* in connection with another phase of the litigation, holding that, if one of the parties to a contract of exchange contended that the note of a third party, which he had received under the contract, was worthless, he should have presented that question in the prior action, and, not having done so, was bound to accept the note at its face value.

The New York case of *Mehlhop v. Central Union Trust Co.,* 235 N. Y. 102, 138 N. E. 751, indicates that a somewhat different rule has been adopted in that state. In my opinion, our court has followed a different and better rule, from which I am not disposed to depart. I cannot concede that appellant's claim here is "independent," as stated by the majority. The prior action was instituted for the purpose of foreclosing the mortgage. The complaint gave credit for the payment made by appellant. Appellant was made

a party to this action and served with process. If he wanted to recover the payment which he had made, that was an issue which he was bound to present in the foreclosure action. He failed to appear in the action, and allowed judgment to be taken upon a basis which he now contends was erroneous.

The matter which appellant herein seeks to litigate could, and, in my opinion, should, have been litigated in the foreclosure action, and the judgment appealed from, therefore, should be affirmed.

MAIN, TOLMAN, and STEINERT, JJ., concur with BEALS, J.