ROSE LANDES, Respondent, v. LEONARD LANDES, Respondent, Impleaded with AUGUSTA LANDES, Appellant, and JEANETTE LEVIN and Another, Defendants, Pursuant to Section 271 of the Civil Practice Act.

First Department, March 8, 1935.

*Samuel Gottlieb* of counsel [*Hyman Bushel* with him on the brief; *Bushel & Gottlieb*, attorneys], for the appellant.

*Herbert C. Smyth, Jr.,* of counsel [*Smyth & Smyth, Jr.,* attorneys], for the respondent, Rose Landes.

*Samuel Witte,* for the respondent, Leonard Landes.

UNTERMYER, J. The plaintiff, assignee of Sednal Realty Corporation, instituted this action to foreclose a mechanic's lien for labor and materials furnished in the alteration of premises known as No. 140 East Twenty-second street in the borough of Manhattan. These premises were owned by Leonard Landes, plaintiff's son, and Augusta Landes, his wife, as tenants by the entirety. At the time of the alterations and for many years before Leonard and Augusta Landes had been judicially separated by a decree of separation secured by the wife against her husband. Subsequent litigation between the parties had resulted in a judgment establishing that Augusta Landes had been unlawfully excluded from the pos-

session of these premises. That litigation also resulted in an unsatisfied judgment in favor of Augusta Landes against Leonard Landes. It was the contention of Augusta Landes at the trial that the mechanic's lien had been fraudulently created by her husband in favor of his dummy, Sednal Realty Corporation, and thereafter assigned to his mother, the plaintiff, in order to eliminate by foreclosure Augusta Landes' interest in the premises. By counterclaim she also asserted that a deed given by Leonard Landes of his interest in the premises to his sister, Jeanette Levin, dated March 10, 1930, and a lease of the premises made by Leonard Landes to Sednal Realty Corporation, dated March 1 1927, were likewise fraudulent and should be set aside.

The trial court sustained the mechanic s lien to the extent of $5,000, holding that Sednal Realty Corporation was not controlled by Leonard Landes but by his brother Joseph Landes and that the defendant Augusta Landes had consented to the improvements which resulted in the lien. The trial court also dismissed the counterclaim asserted by Augusta Landes against Jeanette Levin and Sednal Realty Corporation, in which she demanded that the deed and the lease executed by Leonard Landes be set aside. In so far as the counterclaim is concerned we are of opinion that it could not be interposed in this action, because, even if established, it would not tend to diminish or defeat the plaintiff's recovery, nor did it arise out of the transaction set forth in the complaint. (Civ. Prac. Act, §§ 266, 267; *Lipman* v. *Jackson Architectural Iron Works*, 128 N. Y. 58; *Rose* v. *Rose*, 233 App. Div. 368.) The counterclaim was, therefore, properly dismissed.

In so far as the mechanic's lien asserted by the plaintiff is concerned we reach a different conclusion, even though we agree with the trial court in its determination of most of the issues of fact. Assuming, therefore, that the alteration of the premises was made by Sednal Realty Corporation with the consent of Augusta Landes, and, furthermore, that it was controlled and financed exclusively by Joseph Landes, we are nevertheless of the opinion that no mechanic's lien was created here on account of the relation then existing between Leonard Landes and Sednal Realty Corporation.

On March 1, 1927, Leonard Landes as landlord had leased the premises to Sednal Realty Corporation as tenant for a term of ten years commencing February 21, 1927. While Sednal Realty Corporation was in possession of the premises under that lease it entered into an agreement with Leonard Landes on November 26, 1928, for the alterations resulting in the mechanic's lien which is asserted here. By that agreement the tenant agreed to extensively alter the premises. The landlord agreed that upon completion

he would pay the cost of the improvements to the extent of, but not exceeding $20,000. If the landlord was unable to make payment on completion, the tenant agreed to accept his demand note for the amount due and the landlord agreed to execute such instruments as might be necessary to give the tenant a lien on the premises as security for the payment of the note. There is no reason to suppose that the " lien on the premises " for which the agreement provided contemplated a " mechanic's " lien. It is more probable that it had reference to the lien of a mortgage which should be given to the tenant as security for the cost of the improvements. In any event Leonard Landes, the landlord under an agreement with the tenant, had no power to incumber his wife's estate in the property except with her consent. She could, of course, have consented to the agreement of November 26, 1928, and thereby have subjected her interest to the covenants which it contained, including the obligation to secure the tenant's expenditure by a lien on the premises. But there is no suggestion in the evidence that she consented to that agreement or even knew of its existence. All that she consented to was that the improvements should be made. By doing so she would be deemed to have consented to the creation of whatever lien might result from such improvements by operation of law (*Husted* v. *Mathes*, 77 N. Y. 388; *Jones* v. *Menke*, 168 id. 61; *National Wall Paper Co.* v. *Sire*, 163 id. 122), but to no other lien.

We are, therefore, required to consider whether, in the absence of express agreement, Sednal Realty Corporation, as an incident to the improvements which it made, became entitled to a mechanic's lien by operation of the statute against her interest in the premises. It was entitled to such a lien only if it was in the position of a " contractor " within the meaning of the Lien Law (Lien Law, § 3). We think it was not a contractor but, as defined by section 2, was rather in the position of an owner who in connection with its occupancy of the property had contracted with a co-owner for improvements from which both would benefit. The tenant would benefit during the term of the lease; the landlord at its expiration. By section 2 of the Lien Law the term " owner " is defined to include " a lessee for a term of years " and the term " contractor " is defined as " a person who enters into a contract with the owner of real property for the improvement thereof." Therefore, where two persons are in the position of co-owners of the premises it cannot accurately be said that they are contractors within the meaning of the Lien Law. In such a case the improvement is for the joint advantage of both, even though they have agreed upon the division of the cost among themselves. Not only does

this conclusion follow from the provisions of the statute to which we have referred but it follows also from the construction which was placed upon those provisions in *McNulty Bros.* v. *Offerman* (221 N. Y. 98). In that case it was said: " The contractor whom the Lien Law has in view is one who would be so characterized in the common speech of men. He is one who, in the usual course of trade, has undertaken to improve the property of another. If he happens to have some interest in the land himself, his interest is an accident, and not the source and origin and occasion of his action. That is not the position of a tenant who as an incident to his tenancy, either at his own expense or with contributions from the landlord, has covenanted for betterments. His position does not differ in essence from that of a tenant in common who has improved the common property upon a promise by his co-tenant of equitable reimbursement. The statute, when it speaks of contractors, intends to reach another class."

There is yet another reason for denying to the plaintiff as assignee of Sednal Realty Corporation a lien on the interest of Augusta Landes. The undisputed facts make it very clear that she must have assumed that Sednal Realty Corporation, the tenant, moved by considerations of self-interest, was making these alterations at its own expense. This is evident even from the testimony of Leonard Landes that he had told her that he and his brother, who controlled the corporate tenant, intended to make the alterations without intimating at any time that the tenant would be entitled to reimbursement for its expenditures. When she had demanded alimony he told her that the " house is empty and we cannot get $100 rent for it, and the only hope for me is that if you write to my brother, he has an idea of altering this house." He testified that subsequently " I told her that we are going to alter the building and make an eight-room apartment and also a store in the basement and she said it will be a — consented that we do that." Later when informed that he and his brother intended to make the alterations, he testified that she had said, " Go ahead, do it, you have the property for thirty years under your observation, I am only too glad if the building should be put into a condition that will bring in a big income." He likewise testified that in a letter she had written to Joseph Landes, she had stated, in substance, " it will be a godsend if you agree to alter that property, you know the condition of Leonard, he can hardly pay me my alimony, he is short of this, please send me the money that he owes me and go ahead with the alterations." At no time was any suggestion made which would have caused her to suspect that the alterations should be paid for by the owners or that they would operate as a lien on

her interest in the premises. It could hardly have occurred to her that the owners were expected to pay the full cost of improvements which would inure to the benefit of the tenant then in possession under a lease for a term of years. From so much as she knew she must have thought, as her husband and his brother could not fail to realize, that Sednal Realty Corporation was making the alterations at its own expense in order to secure an increased revenue from the property during the remaining nine years of the lease. Indeed, the testimony of Leonard Landes given in the earlier proceedings and read in evidence on this trial was to the effect that this was the agreement pursuant to which the alterations were made.

Since Augusta Landes' interest in the premises was not affected by the agreement of November 26, 1928, to the provisions of which she never gave consent and of which she did not know and since Sednal Realty Corporation was not entitled to a mechanic's lien on account of the improvements which, as tenant, it made under a contract with its landlord, the judgment should be modified to exclude Augusta Landes' interest from the operation of the lien. As to her, the most that can be said is that she joined with her husband in requesting the tenant to make improvements which she had no reason to suppose would operate as an incumbrance on her interest in the premises.

The judgment should be modified by dismissing the complaint as to the defendant Augusta Landes, with costs to said defendant against the plaintiff, and as so modified affirmed, without costs of this appeal.

MARTIN, P. J., TOWNLEY and GLENNON, JJ., concur; MERRELL, J., dissents.

Judgment modified by dismissing the complaint as to the defendant Augusta Landes, with costs to said defendant against the plaintiff, and as so modified affirmed, without costs of this appeal. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.