[No. 21945. Department Two. December 30, 1929.]

KOEPKE SAYLES & COMPANY, *Appellant,* v. BARNEY B. LUSTIG *et al., Respondents.*[1]

[1]Reported in 283 Pac. 458.

*Karr & Gregory* and *C. L. Harris,* for appellant.
*Robbins & Rickles,* for respondents.

FULLERTON, J.—The appellant, Koepke Sayles & Co., a corporation, is a real estate broker, doing business in the city of Seattle. It had listed with it for sale certain real property of which one Tevis and one Koch were the owners. It entered into negotiations with the respondent, Lustig, for the sale of the property to him, which finally resulted in an agreement on the part of the respondent to purchase the property on certain stated terms. The respondent at that time gave to the appellant his check, payable to the appellant, in the sum of $500 as a part payment on the purchase price of the property. The appellant at the same time gave to the respondent what is termed an earnest money receipt, signed by itself, in which the terms and conditions of the agreement were recited in detail. At the foot of the instrument, was the recital, "Purchaser agrees to buy said property on above terms," underneath which the respondent signed. In the body of the instrument, it was provided that time was of its essence, that the consummation of the sale was to be made at the office of the appellant, and it contained this further provision, namely:

"It is understood and agreed that the agent is in no wise responsible for the delivery of this title, and this agreement is entered into subject to the approval of the owner thereof within three days."

Nowhere in the instrument are the owners named, and nowhere are they referred to other than in the clause above quoted.

The instrument bore date of September 10, 1928, and was approved by the owners in a writing indorsed

thereon under date of September 12, 1928. No notice of the approval of the agreement was given the respondent, and on September 14, 1928, he stopped payment on the check, and subsequently refused to carry out his offer to purchase the property. The present action was instituted by the appellant to recover upon the check, the owners' interest therein having been assigned to it. The respondent defended on the ground that no liability arose under the agreement until it was approved by the owners and notice of the approval communicated to him; contending that, since the approval of the owners was not communicated to him within the three-day period fixed by the agreement, he was at liberty after that time to withdraw his offer to purchase and did so withdraw it. The trial court adopted the respondent's view of the questions involved, and entered a judgment dismissing the action with prejudice. It is from this judgment that the appeal before us is prosecuted.

The trial court concluded from the evidence that the appellant was the agent of the owners of the property the respondent offered to purchase, not the agent of the respondent, and that notice to it of the approval of the offer by the owners, was not notice to the respondent. The appellant contends that this conclusion is not justified by the evidence, arguing

" . . . that the most that can be said is that [the appellant] is a real estate broker representing both parties to the transaction to bring them together and make the deal."

But, in our opinion, the trial court correctly interpreted the legal relation of the parties. The appellant was employed by the owners to find a purchaser for the property. It sought out the respondent for the purpose of selling the property to him. In dealing with

the respondent, its interests were adverse to him; it was its purpose, and it was its duty, to obtain from him as favorable an offer for the property as it could. The instrument containing the offer which the parties signed also bears evidence that the appellant represented the owners. In the clause of the offer which we have quoted, and in its signature thereto, it describes itself as agent. True, it does not say for whom it was acting as agent, but the words are without meaning unless it be meant that it was acting for the owners. There was, moreover, no agreement, either in the written offer or otherwise, by which the respondent agreed to pay the appellant compensation for its services. These considerations are, to our minds, all contrary to the conclusion the appellant would have us draw from the transaction.

The further contention is that notice to the respondent that the owners accepted the offer was not necessary in order to bind him. But the general rule is to the contrary. It was so recognized by us in *Ranahan v. Gibbons,* 23 Wash. 255, 62 Pac. 773, where we quoted from Parsons on Contracts to the following effect:

" 'It is unquestionably true as a general proposition, that a contract cannot bind the party proposing it, and indeed there is no contract, until the acceptance of the offer by the party receiving it is in some way, actually or constructively, communicated to the party making the offer.' "

In 6 R. C. L. 606, this language is used:

"In the case of an offer which requires a reciprocal promise it is clear that mental determination to accept, or even an act done in pursuance thereof, is insufficient to bind the party who makes the offer. To constitute acceptance of such an offer there must be an expression of the intention, by word, sign, or writing com-

municated or delivered to the person making the offer, or his agent. A mere private act of the person to whom the offer is made does not constitute acceptance. For instance, a mere proposal to sell land does not become a sale until accepted, and notice of acceptance given the proposer. A reciprocal promise is required, the party to whom the offer is made must, if he cannot directly communicate his acceptance, use such an agency therefor as amounts to constructive knowledge to the other party. It is nevertheless essential, to convert such proposal into a valid contract, that such acceptance be communicated to the proposer, . . ."

So, in 13 C. J. 284, it is said:

"Since communication of intention is essential to an agreement, an acceptance, like an offer, must, as a rule, be communicated to the offerer or put in the course of communication by an act. There is a radical distinction in regard to communication between offers which ask that the offeree shall do something and offers which ask that the offeree shall promise something. In offers of the former kind communication of the acceptance is ordinarily not required; in offers of the latter kind communication of the acceptance is always essential."

It will be observed that the texts cited note a distinction between offers which ask that the offeree shall do something and offers which ask that the offeree shall promise something, stating the rule to be that communication of the acceptance is not required in the one instance, while in the other it is always essential. An examination of the decisions on the question show that the courts generally make the distinction noted, although there may be some difficulty in reconciling their conclusions when considered with reference to the facts before them. But the case before us presents no difficulty on the latter score. While it is recited that "this agreement is entered into subject to the approval of the owner," it means no more than that the offer shall be accepted by the owner before it becomes oblig-

atory. Notice of the acceptance was therefore required to bind the respondent.

Our conclusion requires an affirmance of the judgment of the trial court, and an affirmance is ordered.

MITCHELL, C. J., FRENCH, MAIN, and HOLCOMB, JJ., concur.