[No. 27134. Department One. August 16, 1938.]

HAROLD POLL, *Appellant,* v. SECOND SEATTLE REAL
ESTATE ASSOCIATES, INCORPORATED, *et al.,*
*Respondents.*[1]

*Patterson & Ross* and *Robbins & Rickles,* for appellant.

*Hyland, Elvidge & Alvord* and *McMicken, Rupp & Schweppe,* for respondents.

SIMPSON, J.—Action was begun by plaintiff to recover damages from defendants resulting, as alleged, from false representations made by defendants concerning the expense of maintaining a building pur-

[1]Reported in 82 P. (2d) 167.

chased by plaintiff from defendant Second Seattle Real Estate Associates, Incorporated.

It is alleged in plaintiff's complaint as follows: That, on the 20th of May, 1937, he purchased from the owner, Second Seattle Real Estate Associates, Incorporated, a certain piece of real property in Seattle at the northeast corner of First and Union streets upon which was located a five-story building, and that the agents conducting the sale of the property were defendants Carter, MacDonald & Company and A. Cohan, who had full information concerning the income and expense of the property; that, for approximately one year prior to May 20, 1937, the defendants A. H. Cohan and Carter, MacDonald & Company from time to time carried on negotiations with plaintiff in an effort to sell him the property, and during such time made the following positive statements relative to the rentals and earnings, to-wit: Gross income, $7,020; and expenses incident to the ownership and operation thereof as follows: operation, $4,519.56, including taxes, $4,226.99; fire insurance, $41; sprinkler insurance, $62.50; liability (public and elevator) $139.07; upkeep, $50; and further represented that, on the basis of an investment of seventy-five thousand dollars, the 'net income was more than three per cent. Plaintiff further alleged that, in reality, there were items of expense incident to the operation which were concealed from plaintiff as follows: heat, $1,200; A. D. T., $111; night watchman, $60; water, $108; making a total of $1,479.00 per year. Plaintiff then claimed his damage on account of such false representations in the amount of $49,300.

In their answer, the defendants Second Seattle Real Estate Associates, Incorporated, and Carter, MacDonald & Company admitted in general the items of ex-

pense, and denied all the material allegations of the complaint.

The defendant Cohan answered separately, stating that all representations made to plaintiff by him with reference to the real property were based on information furnished Cohan by Carter, MacDonald and Company, and that defendant Cohan acted at all times in good faith, and plaintiff had the same and equal opportunity to learn about the conditions surrounding the property in question.

The case was tried to the court sitting without a jury, and at the close thereof judgment was entered in favor of defendants.

The essential facts are summarized as follows: The respondent Second Seattle Real Estate Associates, Incorporated, is a Massachusetts corporation and for many years owned the property sold to the appellant. Carter, MacDonald & Company is a Washington corporation representing the Second Seattle Real Estate Associates. John H. Carter is statutory agent of that corporation and chairman of the board of trustees of Carter, MacDonald & Company.

A. H. Cohan is a realtor engaged in that business in the city of Seattle. During the year 1934, an offer was made by someone to purchase the property for forty-five thousand dollars, which information came in some manner to the attention of A. H. Cohan. After securing information concerning the building, its income, and the expense of operation, Mr. Cohan approached the plaintiff some time during the year 1936 with the suggestion that the property could be purchased for about fifty thousand dollars.

The appellant submitted a bid of forty-five thousand dollars November 23, 1936; another of sixty thousand dollars was made in January, 1937, and again in February, 1937, he offered sixty-five thousand dollars, all of

which bids were rejected. April 26, 1937, appellant submitted a final bid of seventy-five thousand dollars, which was accepted by the owners. All of the proposals made by appellant were submitted through A. H. Cohan, except the one of January, 1937, which was made through an agent named Ben T. Dodge. At the time appellant offered seventy-five thousand dollars, he signed an earnest money receipt dated April 26, 1937, with which he deposited the sum of twenty-five hundred dollars as earnest money.

The deed was sent to the owner, executed May 11, 1937, and returned to Seattle. Escrow instructions were signed and delivered to the Washington Title Insurance Company, which acted for the parties in closing the transaction. One of the copies was signed by the grantee and the other by the grantor. The grantor's instructions were dated May 18, 1937, and the grantee's escrow instruction was signed May 19, 1937.

May 18, 1937, Carter, MacDonald & Company notified appellant and A. H. Cohan by letter that the deed had been received from the owners, and appellant was advised the seller had complied with the terms of the earnest money agreement on its part, and requested appellant to comply with his obligations named in the receipt within five days after the date of the letter.

May 19, 1937, in closing the transaction, appellant and Cohan went to the office of the escrow party and there dealt with Mr. Hawthorne, who was in charge of its escrow department. Appellant delivered his check for the balance of the purchase price, and the escrow company placed the deed on record.

At the time appellant and Cohan went to the office of the title insurance company, appellant, contending that he had not been advised about any payments for heat, inquired about that item and was told by Cohan that the heat involved was a small item required to prevent

the sprinkling system from freezing during cold weather.

Appellant contends that Cohan was the agent of the other respondents, the Second Seattle Real Estate Associates, Incorporated, and Carter, MacDonald & Company, and as such made to him the misstatements complained of in his complaint.

The trial court found that Cohan was not the agent of respondents, but was in fact the agent of appellant. Appellant did not talk to any officer or employee of Carter, MacDonald & Company at any time during the events leading up to the transfer of title, except to Mr. Drew, who supervised the building rentals. All of the other negotiations of appellant were made with Mr. Cohan.

It is evident from all the testimony that appellant either was not told, or did not understand, the actual facts concerning the various items of expense, but clearly respondents Carter, MacDonald & Company and Second Seattle Real Estate Associates, Incorporated, cannot be held liable unless they or their agent released or disseminated erroneous statements relative to this property.

Cohan was not an employee of Carter, MacDonald & Company, nor did they ask him to sell the property in question. He simply heard in some way that the property was for sale, and with the hope of securing a commission endeavored on his own account to induce appellant to purchase the property. Mr. Cohan testified that Mr. Drew gave him the information concerning the various items of expense which were later given to appellants. That information, according to Mr. Cohan, was to the following effect: Annual gross income, $7,020; expenses: taxes, $3,632.16; fire insurance, $41; sprinkler insurance, $62.50; public and elevator insur-

ance, $139.07; upkeep, $50, which would leave a net income of $3,095.27.

He asserted that he secured the information first through an employee of his by the name of Brashem, to whom Mr. Drew had given the information just related. Mr. Brashem testified to the same effect, and further that, at the time the information was given to him, he jotted it down upon a slip of paper, which information was later transferred to a card and filed in the office of Mr. Cohan. It is interesting to note that on the bottom of this memorandum is the following: "See Mr. Carter of Carter, MacDonald & Co., Alaska Bldg. He says building just carries itself."

The testimony of Mr. Drew was to the effect that the information which was given Cohan concerning the admitted expenses of the building consisted of heat, $1,200; A. D. T. service, $110; night watchman, $60; and water, $108; and in answer to a question concerning the expense of heating the building, said:

"They never asked me about it. I told Brashem that the heat ran between $1,100 and $1,200 a year when he was in there. Whether he put it down or not I don't know. Mr. Carter never discussed it with me at all."

Appellant cannot be heard to complain about not having notice of the items of expense because of the fact that the escrow instructions signed by him before the final payment was made contained the following statement: "Prorate and adjust as of date of recording the following: First Insurance, Rents, Water bills, Heat and Light." Even if he did not know of the expense items prior to the time of signing the escrow agreement, he did have it in time to protect himself before he paid the balance on the purchase price by withholding the payment of the balance of the purchase price until he could secure satisfactory information from Carter, MacDonald and Company.

The trial court in his oral opinion at the conclusion of the trial made the following observations concerning the evidence:

"Without reviewing the evidence, I will say that in order for the plaintiff to recover it is necessary for him to establish that Mr. Cohan was the agent of the Second Seattle Real Estate Associates, Inc., a corporation, the owners of the Hancock Building.

"There is nothing in the evidence to show that he was authorized or directed either by that company or by its representative here, Carter-MacDonald, to try and get a purchaser for the building. He has given no evidence of any authority to give any definite price, or to approach anyone in the sale of the property. . . .

"I couldn't find from the evidence, and I wouldn't find that Mr. Cohan was the agent of the owner of the property. But, on the other hand, if it was necessary, I would find that he was the agent of Mr. Poll, the plaintiff in the case.

"Then there is another matter here that, even if you established agency, it would be necessary to establish by the evidence; and that is when Mr. Brashem, an employe of or in the office of Mr. Cohan, went to Carter-MacDonald and saw Mr. Drew as to the income and the expenses.

"Now, I believe that Mr. Drew was telling what actually happened there, and that he did tell Mr. Brashem all the expenses in connection with the heating of the building. . . .

"I would find, if necessary to make a finding, that Mr. Drew did tell Mr. Brashem that there was an expense of $1,100 or $1,200 a year on account of the heating of the building.

"To find otherwise, I would have to find that Mr. Drew deliberately committed perjury on the stand, and he is not the type of man who would do that, I don't believe.

"On the other hand, I do not believe that Mr. Brashem is wilfully misstating the facts. It might be that he didn't take that particular item down. That is the way I can excuse him.

"Now, I think from those cards that Mr. Cohan had, Exhibits '17' and '18', showing that the building was barely carrying itself, would not be sufficient ground for Mr. Poll to make an investment of $75,000 cash in the hope that he would get any return from the property at all. That fact should have been communicated by Mr. Cohan to Mr. Poll; and as I would find that he was the agent of Mr. Poll and not the agent of the owners of the building, of course I couldn't hold the owners responsible for his failure. He would be liable for that himself."

██ ██ Appellant contends that the earnest money receipts signed by appellant and respondents not only indicate, but also prove, that Cohan was the agent of the other two respondents, especially since Cohan was to receive a part of the commission for selling the property.

After a careful examination and consideration of the earnest money receipts, together with the testimony relating to this contention, we find there is no substantial merit in it.

Appellant calls to our attention several cases to prove his contentions. However, a study of these cases discloses that they do not have any particular bearing upon the questions pertaining to the case at bar, inasmuch as the existence of the agency relationship between Cohan and Carter, MacDonald & Company is essentially a factual question.

*Service v. Deming Investment Co.,* 20 Wash. 688, 56 Pac. 837, involved the question of the authority of an agent to close a transaction of sale after he had been authorized by the owners to find a purchaser. In *Nelson v. Title Trust Co.,* 52 Wash. 258, 100 Pac. 730, the question presented was whether the landowner was responsible for the fraudulent representations of its agent. The case of *West & Wheeler v. Longtin,* 118 Wash. 575, 204 Pac. 183, determines the question of the

right of an agent to collect a certain sum named in an earnest money receipt as the real party in interest. *Everett v. Brotherhood Cooperative National Bank,* 138 Wash. 546, 244 Pac. 967, relates only to a question of fact as to whether a real estate broker was the agent of a prospective purchaser of real estate in the making of a survey or investigation of business property.

In *Koepke Sayles & Co. v. Lustig,* 155 Wash. 70, 283 Pac. 458, it appears that the owner of the property employed an agent to list its property for sale. The agent received an earnest money receipt and a check for five hundred dollars from a prospective purchaser. The deal failed and the agent attempted to collect from the signer of the earnest money receipt the amount of the check upon which payment had been stopped. Other cases have been cited, but an investigation discloses that they are of no value to us in determining the issues presented here.

A case bearing upon the question of whether or not the agreement to divide the real estate commission determines the agency, is that of *Singer v. Guy Investment Co.,* 60 Wash. 674, 111 Pac. 886, in which it was contended by appellant that R. C. Erskine & Company were the agents of the owner of the property because the owner had agreed to pay Erskine & Company and another company a commission on the sale of the property. An earnest money receipt was involved in that case, which was signed by the owner and Erskine & Company as agents without any statement showing for whom Erskine & Company were the agents. We held that the signature of Erskine & Company on the earnest money receipt afforded no presumption that it acted for the owner, and stated as follows:

"Nor can it be said that the provisions for a division of the commission, in the light of the evidence, is of any probative force in favor of the appellants [purchasers]."

Relative to the division of the commission, Mr. Carter, of Carter, MacDonald & Company, testified that the division was made because it was in accordance with the rules of the Seattle real estate board and that it was the custom in such transactions that the commission be divided irrespective of any agents' relations. There was no contradictory testimony to these statements made by Mr. Carter.

Consideration of the evidence leads us to the conclusion that Cohan was the agent of the appellant, and did not act for the other respondents during any part of the time the negotiations for sale of the property were being conducted.

We further conclude that Carter, MacDonald & Company made no false representations concerning the expense of the upkeep of the building.

The determination of the case in the superior court depended entirely upon whom the trial court believed after he had heard the evidence of the various witnesses and weighed it in connection with the documents admitted. He ably analyzed the evidence, and since he was in a better position to observe the demeanor of the witnesses, the inflection of their voices, and the manner of testifying, we are not disposed to disturb his conclusions.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and GERAGHTY, JJ., concur.