[No. 31726.   Department One.   September 5, 1951.]

E. L. COLEMAN, *Respondent*, v. M. L. DAVIES *et al., Defendants,* BREWSTER FRUIT GROWERS ASSOCIATION, INC., *Appellant.*[1]

*Allen, Hilen, Froude, DeGarmo & Leedy*, for appellant.

*Ryan, Askren & Mathewson*, for respondent.

[1] Reported in 235 P. (2d) 199.

DONWORTH, J.—Plaintiff brought action against defendants to recover damages allegedly caused by defendants' breach of a contract of purchase and sale of sixty thousand pounds of frozen raspberries. Defendant Brewster Fruit Growers Association, Inc., cross-complained for damages alleged to have been caused by plaintiff's breach of a contract for the sale of beans and corn. The action was tried to the court. After making findings of fact and conclusions of law, the trial court dismissed the cross-complaint of defendant Brewster Fruit Growers Association, Inc., dismissed plaintiff's action against defendants M. L. Davies and Alice F. Davies, his wife, and entered judgment against Brewster Fruit Growers Association, Inc., from which it has appealed.

Brewster Fruit Growers Association, Inc., transacted business in the city of Seattle under the name of M. L. Davies Company and at all times pertinent hereto was engaged in supplying various steamship companies and ships with canned goods and fresh and frozen fruits and vegetables. It had in its employ one C. W. Clark.

The trial court's finding of fact No. III, which is challenged in appellant's first assignment of error, reads:

"That on May 23, 1946, the said C. W. CLARK, with full authority so to do and as agent for the defendant, BREWSTER FRUIT GROWERS ASSOCIATION, INC., signed a written contract to purchase from the plaintiff one carload of 30-pound tins of frozen red raspberries at packer's opening price upon the further terms and conditions set forth in said contract, . . . That the said C. W. CLARK then delivered said written contract to one HAROLD J. BARRETT, a food broker, who then delivered the said contract to the plaintiff. That thereafter and on or about June 2, 1946, the said plaintiff signed said contract and *caused the defendant to be notified of his acceptance thereof within a reasonable time after his receipt thereof.* That on or about August 2, 1946, an executed copy of said contract was returned to the defendant. That the plaintiff otherwise performed all of the terms and conditions of said contract to be performed by him. That on or about August 30, 1946, the defendant breached said contract by refusing to accept delivery of and pay for said raspberries." (Italics ours.)

The other material provisions of the alleged contract (herein, for convenience, referred to as the contract) were:

"Time of Shipment When packed and ready during first months storage period.

. . . . . . . .

"F.O.B. Cold Storage Point

"Storage—First month for Sellers' Account. Thereafter, for Buyer's Account

"Terms—Net Cash. Before packing first item Buyer to place with the Centralia Branch of the National Bank of Commerce, Centralia, Washington, an irrevocable letter of credit authorizing payment of these items upon presentation by Packer of W/R and any other papers or documents so designated in this Contract."

No letter of credit was ever placed with the bank as required by the contract. On August 30, 1946, respondent drew a draft in the amount of $28,500 with warehouse receipt attached and caused it to be presented to appellant through the bank. The draft was dishonored and delivery of the raspberries refused by appellant.

Appellant takes particular exception to the italicized portion of the above-quoted finding wherein the court found that respondent caused appellant to be notified of his acceptance of appellant's offer within a reasonable time after respondent received it. It is appellant's contention that the evidence does not support this portion of the finding, and that, since notification of acceptance was not made within a reasonable time, no contract to purchase the raspberries ever came into existence.

We have in mind the rule that findings of the trial court, made upon conflicting evidence, will not be disturbed by this court unless we can say that such findings are not supported by the weight of the evidence. *Stevens v. King County*, 36 Wn. (2d) 738, 220 P. (2d) 318. Thus, we must accept the trial court's finding as to acceptance unless the evidence preponderates against it. *Bond v. Wiegardt*, 36 Wn. (2d) 41, 216 P. (2d) 196.

It is undisputed that respondent signed the contract within a week or ten days after May 23, 1946, when it was

signed by C. W. Clark on behalf of appellant. It is also undisputed that the signed contract was not returned to appellant until August 2, 1946. Respondent sought to prove that sometime between these two dates Harold J. Barrett, the food broker who negotiated the contract, orally notified appellant that respondent had accepted the contract. The testimony of the other witnesses produced by the parties was in sharp conflict on this point.

In its oral decision, the trial court said:

"Now, as to the question of whether the contract was accepted within a reasonable time, we have the testimony of Mr. Barrett that the fact of acceptance by Mr. Coleman was communicated to Clark, I believe. Mr. Barrett is the one person who has testified here who has perhaps less personal interest in the outcome, at least if he has any it isn't apparent to the Court, and I will accept his testimony in that regard."

We, therefore, must analyze Mr. Barrett's testimony in detail in order to determine whether the weight of the evidence supports the italicized portion of finding No. III.

On direct examination, by respondent's counsel, Barrett testified as follows:

"Q. Would you tell the Court what you did with these particular contracts dated the 23rd day of May, '46, when you got them from C. W. Clark? A. I either mailed them to or delivered them to E. L. Coleman Company, but which I cannot state definitely. I can't tell you whether I mailed them to him or delivered them to him. Q. Now, thereafter did you communicate with anyone in the M. L. Davies Company and in particular Mr. Clark as to whether or not these contracts had been accepted by Mr. Coleman, the packer? A. We were in constant touch with Mr. Clark during that period in setting up this division, so to speak, of their company, and I would say during that immediate period there we were talking daily with Mr. Clark, working out these different products with him. Q. Was he advised that these particular orders had been accepted by the packer during that period of time? A. Yes."

It is to be noted that this witness was quite indefinite as to *when* he had told Clark that respondent had signed the alleged contract. He further testified on cross-examination

as to why the signed contract was not returned prior to August 2nd as follows:

"Q. And when did you next hear of these contracts in any way? What was the next date after May 23rd? A. You mean that I received them back signed? Q. No, when was your attention next called to these contracts after May 23rd? You see, I'm trying to get a sequence here of events. A. Well, I would say the contract, by virtue of our constant dealings with M. L. Davies Company at that time, the contracts were discussed all along the line. . . . Q. Well now, we have covered the time up to July 1st about the conversations and communications between you and Mr. Coleman concerning the return of Contract No. 703, and 701 for that matter. Do you recollect any conversations or communications between July 1, 1946, and August 1, 1946, concerning the reason why or concerning the fact that neither one of these two contracts had been returned? Mr. Madden: With whom, Counsel? Mr. Leedy: I prefaced that with between himself and Mr. Coleman. A. There was a time which was between May 23rd and August 2nd, *that's as near as I can make it*, in that period in there, that we did discuss with Mr. Coleman that we had not received those contracts. Q. (By Mr. Leedy) And during that period I will ask you if you recollect your exact conversations with Mr. Clark concerning the fact that the contracts had not been returned or the reason why? A. *No, I do not*. Q. Do you know whether any conversations at all took place or any communications of information between you and Mr. Clark on that subject matter during that time? A. Oh, I think undoubtedly they did, yes, sir, but I don't— Q. You don't know what the explanation was or what the tenor of the communication was? A. No. The only information that we'd ever pass on to Mr. Clark was the same explanation which Mr. Coleman gave us that he had sent the contracts and we advised him that we didn't receive them and he advised us that they must have been mislaid and he would find them and forward them to us. Q. So you believe sometime in that period you did advise Mr. Clark that the contracts had not been returned to you? A. That's right." (Italics ours.)

Again, on his redirect examination, Barrett was interrogated about notice to Clark of respondent's acceptance of the contract and testified:

"Q. Now, I think you have testified on direct examination, have you not, that *prior to August 3rd, sometime during*

*July*, you talked with Coleman and he told you the contracts had been signed? A. That's right. Q. But misplaced? A. That's right. Q. And did you communicate this intelligence, this information, to somebody in the Davies Company? A. Yes. Mr. Clark. Q. To Mr. Clark? A. That's right." (Italics ours.)

On June 25, 1946, respondent wrote to Barrett in part as follows:

"To date we have packed 1241—30 lb. tins of strawberries on M. L. Davies contract which amounts to $14,892.00. I am quite sure we will be able to fill all our commitments on the strawberries and the raspberries. The raspberry c[r]op looks good this year. They are ripening a little later than previous years but it looks like an excellent crop.

"We have packed a few raspberries already. You had better contact M. L. Davies and have him place his irrevocable letter of credit covering the raspberries with the bank here. See that this is taken care of immediat*l*ey, will you?"

Barrett had no independent recollection of having received this letter but he recalled that respondent had requested him to have appellant place its letter of credit with the bank. Neither did Barrett remember receiving respondent's letter of July 2, 1946, which read:

"I have called you so many times that you are probably getting tired of listening to me.

"I called the bank again this a. m. but they haven't heard from M. L. Davies Co. in regards to the raspberries as yet. You had better go down and take him to the bank like you did on the strawberries. We will have his entire pack up in a few days.

"I understand that some sales have been made at 40¢ per lb. on raspberries. I didn't think they would go quite as high as strawberries but 40¢ is O. K. with me.

"I am enclosing a copy of letter to M. L. Davies Co. direct asking them to take care of letter of credit on raspberries."

Parenthetically, it should be stated that appellant's president denied receiving the letter mentioned as having been mailed directly to it by respondent. The same conflict in the testimony of the parties existed with regard to a purported letter of July 24, 1946, in which respondent demanded that

appellant accept and pay for the raspberries. The trial court made no finding regarding appellant's receipt of either of these letters, and we disregard them in our decision. *Bond v. Wiegardt, supra.*

It is to be noted that Barrett did not testify as to any definite date when he notified appellant that respondent had accepted the contract. His recollection on this point was quite vague. Nor did the trial court in its findings specify any date when this was done. Therefore, we must regard the language of finding No. III, to the effect that the notification of acceptance was made within a reasonable time, as being a conclusion of law rather than a finding of fact.

The question of what is a reasonable time must be determined from the nature of the contract and the character of the business in which the parties were engaged. See 1 Restatement, Law of Contracts, 47, § 40. The contract did not specify the purchase price in money, but designated it as "firm at packer's opening" price. On May 23, 1946, when appellant executed the contract, it was not known what this price would be. The evidence is undisputed that this price was not ascertainable until about July 15, 1946. The price was indefinite until it was fixed within the industry at the beginning of the packing season. For the 1946 season the packer's opening price was 38¢ per pound.

We cannot find any testimony in the record which shows that respondent's acceptance of this contract was communicated to appellant prior to July 15th when the packer's opening price became known. Up until that time, each of the parties was assuming a risk as to what the price would be. However, after that time respondent knew what the contract price of these raspberries was and, having been in possession of the document since May 23rd, could either claim that it was in effect or not as he deemed advisable.

On August 2, 1946, respondent returned the executed contract to Barrett, who delivered it to appellant. Objection was promptly made to Barrett by appellant. Incidentally, it should be noted that appellant had purchased a small quantity of raspberries through Barrett at 36¢ and at 37¢ per

pound in June and July. Upon Barrett's suggestion, it wrote Barrett under date of August 6, 1946, stating its position as follows:

"We dislike very much when situations arise such as the one involving the contract between ourselves and E. L. Coleman Co., on the other hand we are in no position to stand still on this deal on the basis you have talked.

"You will note that this contract is dated May 23, 1946. Now, on August 2, 1946 you return to us our copy of the contract with the sellers signature. Of course you advised us that the packer had misplaced these contracts and was under the impression that he had returned them to you. This may all be true, but we still did not receive the assurance of delivery in the form of a signed contract until August 2, 1946. If we make a practice of signing contracts and letting the seller hold them for practically 10 weeks to see what the market is going to do then we can assure you we will not stay in business very long.

"On the car of strawberries we bought. Before this item was packed the seller demanded that a letter of credit guaranteeing payment be placed in his bank in Centralia, Washington, this we complied with. According to the contract this same guarantee was to be in effect on the balance of the contract. The mere fact that we did not get the contracts back plus the fact that we were not asked for a letter of credit against the raspberries was sufficient reason for us to assume we were not going to receive delivery.

"About a week ago you advised us that the contracts would be forthcoming and that the seller was ready to make delivery on the car of Raspberries at 38¢ per pound F.O.B. Olympia, Washington. We know that you are quite aware of the fact that we could at that time and can today purchase all the 30 lb. Red Raspberries we want at 35¢.

"Trust you will understand our position in this matter."

■ Considering the nature of this contract and the business situation of the parties, we are of the opinion that a reasonable time within which notice of acceptance must be communicated to appellant expired when the packer's opening price became known. This date was on or about July 15, 1946. Since there was no credible evidence that such notice was communicated to appellant prior to that date nor any finding of the trial court to that effect, we are constrained to

hold that respondent failed to sustain the burden of proof on this vital issue.

■ We have many times held that, in the absence of an acceptance of an offer within the time specified therein or within a reasonable time (where no time limit is specified), there is no contract. Some of our decisions on this point are: *Koepke Sayles & Co. v. Lustig*, 155 Wash. 70, 283 Pac. 458; *Troyer v. Fox*, 162 Wash. 537, 298 Pac. 733, 77 A. L. R. 1132; *Roethemeyer v. Milton*, 177 Wash. 650, 33 P. (2d) 99; *Maxwell v. Provident Mut. Life Ins. Co.*, 180 Wash. 560, 41 P. (2d) 147; *State ex rel. Philips v. Hall*, 6 Wn. (2d) 531, 108 P. (2d) 339.

■ Since there was no finding that respondent caused notice of acceptance to be communicated to appellant prior to the time when the packer's opening price was announced, nor credible evidence upon which such a finding could be based, no contract was proven. There being no contract, the trial court erred in granting judgment against appellant for damages due to the alleged breach thereof.

The judgment is reversed, with directions to dismiss the action.

SCHWELLENBACH, C. J., BEALS, HILL, and FINLEY, JJ., concur.