[No. 15500-5-III.   Division Three.   April 22, 1997.]
CHARLES E. GRAAFF, ET AL., *Appellants,* v. BAKKER BROTHERS OF IDAHO, INC., *Respondent.*

---

816

*Allan Galbraith,* for appellants.

*Jay A. Johnson, Brian J. Dorsey,* and *Davis, Arneil, Dorsey, Kight & Parlette,* for respondent.

SWEENEY, C.J. — In 1988, Bakker Brothers of Idaho, Inc., agreed to buy Charles E. Graaff's 1989 onion seed crop. Their contract required an 85 percent germination rate. Mr. Graaff harvested the onion seed in September 1989. On October 7, 1989, the seed was received by Bakker.

On October 11, Bakker began processing Mr. Graaff's seed by running it through a screen mill and scalping process. The process consists of passing the seed through a series of screens, shakers, and fans to eliminate dirt and

other unwanted material in the seed. Bakker then cleaned the seed with water and dried it.

At various points in the process, Bakker tested samples for germination. Before processing, the germination rate was 84 percent. After processing, germination rates fell to 69 percent and 67 percent on two separate samples. Because of the low germination rates, Bakker had the seed tested at several independent laboratories. That testing took place in January, February and April 1990 and produced germination rates ranging from 51 percent to 80 percent.

In January 1990, Bakker told Mr. Graaff that the seed had failed the contract germination requirements and was unmarketable. Bakker said it would not pay Mr. Graaff for the seed unless it found a buyer. It could not find a buyer. On August 14, 1990, Bakker told Mr. Graaff to pick up his seed.

In 1994, Mr. Graaff sued Bakker. Both parties moved for summary judgment. The trial court granted Bakker's motion and dismissed Mr. Graaff's complaint. Mr. Graaff appeals.

## ISSUES

We are asked to answer the following questions:

(1) Does a factual issue remain about when the germination rate should be measured—before or after processing?

(2) Did Bakker timely inspect and effectively reject the seed?

(3) Did Bakker accept the seed because its acts were inconsistent with Mr. Graaff's ownership?

## DISCUSSION

■ Standard of Review. We review a motion for summary judgment de novo and engage in the same inquiry as the trial court. *Webstad v. Stortini*, 83 Wn. App. 857, 864, 924 P.2d 940 (1996), *review denied*, 131 Wn.2d 1016

(1997). We consider facts in the light most favorable to the nonmoving party. And we will affirm the grant of summary judgment only when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. *Id.* at 864-65.

Germination Rate. Mr. Graaff first contends that material issues of fact remain about the contract germination rate. He argues that the germination rate should be tested before processing. The contract here requires an 85 percent germination rate but is silent on whether that is before or after processing. It simply says that Bakker can reject the crop if the germination rate is less than 85 percent "or if the seeds cannot be *cleaned* to contain less than *one per cent* (1 %) inert [material] . . . ." (Emphasis added.)

■■ Extrinsic evidence is admissible to establish trade usage to give particular meaning to the terms of an agreement. *Morgan v. Stokely-Van Camp, Inc.*, 34 Wn. App. 801, 808, 663 P.2d 1384 (1983); RCW 62A.1-205(3). Usage of trade is a practice observed so regularly in an industry that contracting parties expect that it will be followed in the transaction in question. The existence and scope of trade usage are questions of fact. RCW 62A.1-205(2).

■ Here, Chris Jancik, executive vice-president and manager of Bakker, testified by affidavit that germination tests taken after the seed had been washed and cleaned is the procedure followed in the seed industry for determining if seed is acceptable. His representation of the trade practice is uncontradicted. And we therefore accept it as fact. *Consolidated Elec. Distribs., Inc. v. Northwest Homes of Chehalis, Inc.*, 10 Wn. App. 287, 292, 518 P.2d 225 (1973); *see also Fred J. Moore, Inc. v. Schinmann*, 40 Wn. App. 705, 710, 700 P.2d 754 (1985) (undisputed evidence that 10 percent contamination was acceptable was sufficient to establish "trade usage" of " 'Scotch Mint Roots . . . of a good solid stand' ").

Mr. Graaff argues that use of the word "cleaned," which allows Bakker to reject the seed if it "cannot be cleaned to

contain less than one per cent (1 %) inert," suggests that cleaning was not intended to modify the germination rate condition. He claims this express term should control over any extrinsic evidence of usage of trade. RCW 62A.2-208(2). Whenever reasonable, the express terms of the agreement and any usage of trade should be construed as consistent with each other. RCW 62A.2-208(2). Mr. Graaff's interpretation is not reasonable. Using the word "cleaned" refers only to eliminating "inert" material. It does not express an intention to measure the germination rate before cleaning. It is also uncontradicted that cleaning usually improves germination rates.

Mr. Graaff next argues that application of trade usage here effectively nullifies the contract's risk of loss provision. He claims that, since the contract required him to "deliver all the seed F.O.B. as directed," he transported the seed at his own risk and upon delivery to Bakker the risk of loss passed to Bakker. *See* RCW 62A.2-319(1)(b); RCW 62A.2-509(3). He is mistaken.

■ "Where a tender or delivery of goods so fails to conform to the contract as to give a right of rejection the risk of their loss remains on the seller until cure or acceptance." RCW 62A.2-510(1). "[T]he seller by his individual action cannot shift the risk of loss to the buyer unless his action conforms with all the conditions resting on him under the contract." RCWA 62A.2-510 U.C.C. cmt., at 279.[1] Therefore, even if we assume that the contract's use of F.O.B. passed the risk of loss, the term became operative only when Mr. Graaff tendered conforming goods. *See* RCW 62A.2-503(1), (3) (explaining F.O.B. delivery term requires seller to "put and hold conforming goods at the buyer's disposition"); RCWA 62A.2-509 U.C.C. cmt., at 276

---

[1]*See generally T.J. Stevenson & Co. v. 81,193 Bags of Flour*, 629 F.2d 338, 356 (5th Cir. 1980) (infestation of flour before shipment gave buyer "a right of rejection" causing risk to remain with seller until buyer accepted flour); *In re Empire Pac. Indus., Inc.*, 71 B.R. 500, 504 (Bankr. D. Or. 1987) (seller retained risk of loss of nonconforming doors when rejected by buyer); *Graybar Elec. Co. v. Shook*, 283 N.C. 213, 195 S.E.2d 514, 517 (1973) (seller responsible for risk of loss for nonconforming cable stored on buyer's land).

(explaining that risk of loss passing to buyer is "limited strictly to those cases where there has been no breach by the seller").

The postgermination rate of Mr. Graaff's onion seed was below the contract's requirements. The goods were, therefore, nonconforming.

Timely and Effective Rejection. Mr. Graaff next claims that Bakker did not timely or effectively reject the nonconforming goods.

■ A buyer has a right before acceptance to inspect delivered goods at any reasonable place and time and in any reasonable manner. RCW 62A.2-513(1). The reasonableness is again a question of trade usage, past practices between the parties, and the other circumstances of the case. RCWA 62A.2-513 U.C.C. cmt., at 286; see *Cervitor Kitchens, Inc. v. Chapman*, 82 Wn.2d 673, 678, 513 P.2d 25 (1973) (contractor's storage of kitchen units for three months before inspection was reasonable).

Bakker completed washing and drying the seed around November 28, 1989. Bakker's germination tests were completed on December 18, 1989, and February 6, 1990. Independent tests requested by Bakker were completed on January 6, January 26, January 29, February 15, April 12, and April 16, 1990. A germination test takes at least 15 days. The trade practice is to perform the test after processing. Bakker *inspected* the seed in a reasonable time and manner.

■ Once it determined that the seed was nonconforming, Bakker must then reject the seed within a reasonable time and give seasonable notice to Mr. Graaff. RCW 62A.2-602(1). The timeliness of Bakker's rejection depends on the timeliness of its inspection. RCWA 62A.2-602 U.C.C. cmt., at 294. "An action is taken 'seasonably' when it is taken at or within the time agreed or if no time is agreed at or within a reasonable time." RCW 62A.1-204(3). Where the facts are undisputed and reasonable minds could not differ, we determine a "reasonable time" as a matter of

law. *Jarstad v. Tacoma Outdoor Recreation, Inc.*, 10 Wn. App. 551, 558, 519 P.2d 278, *review denied*, 83 Wn.2d 1014 (1974). Here, Mr. Graaff talked with Bakker in January 1990. Based on those conversations, Mr. Graaff understood that because of the seed's low germination rate, Bakker would not purchase the seed unless it could find a buyer. This is an adequate and seasonable notice of *rejection*. *Kysar v. Lambert*, 76 Wn. App. 470, 483, 887 P.2d 431 (finding sufficient evidence to support rejection based on telephone call by buyer), *review denied*, 126 Wn.2d 1019 (1995).

Acceptance by Acts Inconsistent with Seller's Ownership. Mr. Graaff finally claims that even if Bakker's notice of rejection was timely, Bakker subsequently accepted the goods by trying to sell the seed. *See* RCW 62A.2-606(1)(c) (acceptance occurs when buyer does an act inconsistent with seller's ownership).

■ A merchant buyer is under a duty after rejection of goods in its possession or control to follow any reasonable instructions received from the seller. RCW 62A.2-603(1); *Kysar*, 76 Wn. App. at 481. Without such instructions, the merchant buyer must make reasonable efforts to sell the goods for the seller's account if the goods are perishable or threaten to quickly decline in value. RCW 62A.2-603(1). A buyer's good faith effort to sell is not acceptance. RCW 62A.2-603(3). Since no other instructions were received from Mr. Graaff, Bakker's attempts to sell were in accordance with RCW 62A.2-603.

We affirm the trial court's grant of summary judgment in favor of Bakker.

SCHULTHEIS and BROWN, JJ., concur.