[No. 25498-4-III.   Division Three.   April 17, 2007.]

MIKAILA SHERROD, *Through her Guardian ad Litem,*
*Respondent,* v. DAVID KIDD ET AL., *Appellants.*

74

*Scott A. Bruns*, for appellants.
*David R. Hevel*, for respondent.

¶1 SWEENEY, C.J. — This appeal follows a suit for personal injury. The defendants offered to settle. The plaintiff proceeded to arbitration. The arbitration award was less than the offer. The plaintiff then told the defendants she would accept the previous offer. We conclude that the "acceptance" of the offer, after a trial or an arbitration decision here, comes too late. It is, in the words of the *Restatement (Second) of Contracts* (1981), unreasonable. We then reverse the decision of the trial judge that enforced a settlement agreement despite the intervening arbitration award.

## FACTS

¶2 David and Elizabeth Kidd's dog bit Mikaila Sherrod. Mikaila, through her guardian ad litem (GAL), made a claim for damages. On June 14, 2005, the Kidds offered to settle the claim for $31,837. On July 12, Mikaila, through her GAL, sued the Kidds. On July 20, the Kidds bumped their offer to $32,843.

¶3 The suit was subject to mandatory arbitration. The parties proceeded to arbitration on April 28, 2006. On May 5, the arbitrator awarded Mikaila $25,069.47. On May 9, the GAL wrote to the Kidds and purported to accept their last offer of $32,843, made the year before.

¶4 The GAL, on Mikaila's behalf, moved to enforce the settlement agreement. The court concluded the offer was properly accepted because it had not been withdrawn. And it entered judgment in the amount of the first written offer.

## DISCUSSION

¶5 Our review here is de novo. *Lavigne v. Green*, 106 Wn. App. 12, 16, 23 P.3d 515 (2001). Settlement agreements are governed by contract principles "subject to judicial interpretation in light of the language used and the circumstances surrounding their making." *Stottlemyre v. Reed*, 35 Wn. App. 169, 171, 665 P.2d 1383 (1983).

¶6 The Kidds contend that the trial court did not consider that implicit in its settlement offer was the GAL's forbearance in proceeding with the arbitration to its conclusion. The GAL argues that the offer was not conditioned upon the arbitration proceeding in any manner. And the offer provided no time limit for its acceptance. The GAL further claims that the consideration to create an enforceable agreement—her promise to dismiss her lawsuit—was the same when she accepted it as when it was offered. Her consideration included relinquishing her right to request a trial de novo.

¶7 An offer to form a contract is open only for a reasonable time, unless the offer specifically states how

long it is open for acceptance. *Brown Bros. Lumber Co. v. Preston Mill Co.*, 83 Wash. 648, 655, 145 P. 964 (1915) (quoting *Minneapolis & St. Louis Ry. v. Columbus Rolling Mill*, 119 U.S. 149, 151, 7 S. Ct. 168, 30 L. Ed. 376 (1886)); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 41 (1981); 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 2.16, at 203-04 (rev. ed. 1993). "[I]n the absence of an acceptance of an offer . . . within a reasonable time (where no time limit is specified), there is no contract." *Coleman v. Davies*, 39 Wn.2d 312, 320, 235 P.2d 199 (1951).

¶8 How much time is reasonable is usually a question of fact. RESTATEMENT, *supra*, § 41(2). But we can decide the limits of a reasonable time if the facts are undisputed. *Graaff v. Bakker Bros. of Idaho, Inc.*, 85 Wn. App. 814, 820-21, 934 P.2d 1228 (1997). And here the essential facts are not disputed.

¶9 A reasonable time "is the time that a reasonable person in the exact position of the offeree would believe to be satisfactory to the offeror." 1 PERILLO, *supra*, § 2.16, at 203-04. "The purpose of the offeror, to be attained by the making and performance of the contract, will affect the time allowed for acceptance, if it is or should be known to the offeree. In such case there is no power to accept after it is too late to attain that purpose." *Id.* at 211. A reasonable time for an offeree to accept an offer depends on the "nature of the contract and the character of the business in which the parties were engaged." *Coleman*, 39 Wn.2d at 318 (citing RESTATEMENT OF CONTRACTS § 40, at 47 (1932)).

¶10 Implicit in an offer (and an acceptance) to settle a personal injury suit is the party's intent to avoid a less favorable result at the hands of a jury, a judge, or, in this case, an arbitrator. The defendant runs the risk that the award might be more than the offer. The plaintiff, of course, runs the risk that the award might be less than the offer. Both want to avoid that risk. And it is those risks that settlements avoid.

¶11 The GAL relies on *Kane v. Gwinn Investment Co.*[1] In *Kane*, the trial court held a party to the terms of a pretrial

---

[1] *Kane v. Gwinn Inv. Co.*, 123 Wash. 320, 212 P. 256 (1923).

settlement offer that the plaintiff accepted midtrial. *Kane*, 123 Wash. at 327-28. But Mikaila did not accept this offer midway through the arbitration here—before a decision. The arbitration was over; the award had been made. *Kane* is therefore distinguishable.

¶12 In *Coleman*, a prospective buyer of raspberries sent a written offer to a grower in May for the purchase of the raspberries based on the "packer's opening" price on July 15. *Coleman*, 39 Wn.2d at 318. The grower sat on the offer until August (well after the July 15 price had been announced) and then tried to accept it. The court ordered judgment for the prospective buyer: "The price was indefinite until it was fixed within the industry at the beginning of the packing season. . . . Up until that time, each of the parties was assuming a risk as to what the price would be." *Id.*

¶13 The "reasonable time" for accepting the offer expired with the announcement of the packer's opening price because when the offer was made, the parties knew that the price of raspberries would be set by a particular date. *Id.* at 319. Here, the value of this claim was set after arbitration. It was certainly subject to appeal but nonetheless set by a fact finder.

¶14 This offer expired when the arbitrator announced the award and was not subject to being accepted.

¶15 We reverse the decision of the trial judge to the contrary.

KULIK, J., and KATO, J. PRO TEM., concur.